## JACOBS v. IODENT CHEMICAL CO.
### No. 4033.

Circuit Court of Appeals, Third Circuit.
June 6, 1930.

638

C. C. Cousins, of New York City, for appellant.

Crichton Clarke, of New York City (W. Heyward Myers, Jr., of Philadelphia, Pa., and Howard C. Chilson, of Detroit, Mich., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

■ The District Court entered an interlocutory decree partly for the Iodent Chemical Company, the plaintiff, and partly for Jacob M. Jacobs, trading as Jacobs Drug Company, the defendant, with injunctions against both. Jacobs appealed. The Iodent Company did nothing, preferring, as it said, to postpone action until final decree. Yet after answering the case on Jacobs' appeal it reserved in its brief points for discussion when ultimately it should appeal and then proceeded to discuss them at length. As the Iodent Company has not appealed from the court's findings of fact, which it could have done, it is not in position now to attack them. We shall therefore regard the court's findings as unassailed and the facts established for present purposes.

The principal finding—the one that lies at the base of every question—is that Jacobs was first to adopt and use the word "Iodent" as a trade-mark for tooth paste. Anticipating this judgment of the court, Jacobs, by answer and cross-bill, claims all the rights, privileges and immunities of a holder of a trade-mark by prior adoption, including the right to go everywhere in the United States, even into territories in which the Iodent Company had first gone and built up a trade with the mark and, accordingly, claims the right to enjoin its further use of the mark anywhere and the right to an accounting for past infringement. From the large record in this case there emerges, as often happens, a very narrow issue which we have no doubt is controlled in the main by the law of Hanover Star Milling Company v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713, and United Drug Company v. Theodore Rectanus Company, 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141.

■ The Iodent Company, the junior adopter, innocently and in complete ignorance of Jacobs' prior adoption, coined and adopted the word "Iodent" in Detroit and by business efforts and costly advertising extended its business with the trade-mark all over the United States, including the State of New Jersey, all of which territory, except the City of Paterson in New Jersey, Jacobs, the senior adopter, had left unoccupied. Against this fact Jacobs claims, by reason of the first adoption of the trade-mark rather than by reason of his use of it, a title in gross or a right exclusively to use the mark throughout forty-seven states of the United States and throughout that part of New Jersey, the forty-eighth state, into which he had never entered. The Hanover Mills and Rectanus Cases show the error in this claim as to all states except New Jersey and, we think, rule squarely against it. Our only concern is whether the learned trial court was right in withholding much of the State of New Jersey from Jacobs and in limiting his use of his first adopted trademark to the retail business in his own store or stores in the City of Paterson, and only in retail amounts and to retail customers buying for their own use and not for resale, though awarding him an accounting by the plaintiff for sales in that city.

■ The facts on which this part of the decree was predicated are briefly these:

Jacobs has for a long time conducted a retail drug business at a store in Paterson, New Jersey. In November, 1917, he adopt-

ed the word "Iodent" as a trade-mark for a tooth paste and in the same month began ordering the paste from a New York concern and continued to order it until the maker was enjoined by a decree of a New York court, on bill of the instant plaintiff, entered on May 25, 1926. During these nine years Jacobs purchased from this source only twenty-nine gross of tooth paste packages or tubes. In January, 1927, he purchased three gross from another source. He may have purchased still more from others but the amount, if any, was not substantial enough for him to show it in the record. This suit was brought on March 9, 1927. Thus he purchased, and we assume he sold under the trade-mark, about three and one-half gross per year, or less than one tube per day. Oddly enough, he sold the plaintiff's paste similarly marked at the same time. Jacobs, however, says in his brief that sales were made in "more than one store in Paterson," that they were made "also in several places far removed from Paterson," and that he "was expanding his business and would have continued to do so except that being a poor man he lacked the necessary capital at that time." As his sales activities, or lack of them, have an important bearing on the question of trade-mark territory, we have searched the record carefully to find the scope of his sales. The volume, so far as we can discover, was limited to approximately thirty-two gross. There is evidence of sales made in a store at one time owned by Jacobs and located in Midland, New Jersey. That was in 1917. Sales may have been made in a store in Brooklyn but of this Jacobs can give no certain data. That was in 1918. A shipment was made to Philadelphia but the amount and date are not given. He advertised his Iodent tooth paste in conjunction with his other wares in local papers and had customers for Iodent at his Paterson store from Passaic, Hackensack and perhaps other towns in the vicinity.

On this evidence we hold with the learned trial judge that Jacobs' Iodent business had for ten years been local to Paterson and at the time of suit and long before had been conducted at retail in his Paterson drug store. Clearly, therefore, Jacobs, as the court found, is entitled as the prior adopter to sell his paste under the trade-mark at retail in that store. Our concern, as we have said, is whether, under his claim made as an alternative to his claim of title in gross, he has, by reason of his trade in the Paterson market, the right to sell tooth paste at retail or wholesale under his trade-mark in all other parts of New Jersey to the exclusion of the plaintiff, the Iodent Chemical Company. Just here the case differs—or departs—from the Hanover Mills and Rectanus Cases. The adoptions in each of those cases were, as here, in good faith and without notice of use in other territories. In the Hanover Mills Case, the first adopter, resident in Ohio, was excluded from territory into which he had not entered until he followed the later adopter. In the Rectanus Case, the first adopter, resident in Massachusetts, while permitted to go elsewhere, was kept out of the territory of the later adopter. The contested territory in each case was a state; the first Alabama, the second Kentucky.

In the first case, the business of the first user in the territory in dispute was not local to any city, but was general, following a state-wide advertising campaign; in the second case, it was for a time restricted to "Louisville and vicinity," the inference being that later it expanded. In both cases the use, once begun, was active and continuous through long periods. In both decisions the court gave the prevailing party a whole state for its trade-mark territory. This was in consonance with the concurring opinion of Mr. Justice Holmes in the Hanover Mills Case in which he said in substance, that while he agreed with the decision of the court and with its reasoning, "so far as it goes," yet it seemed to him that as trade-mark rights are conferred by the sovereignty of the state in which they are acquired and with which the Congress has nothing to do when marks are used in commerce wholly between citizens of the same state, Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550, state lines are of importance, for it is only when one seeks to pass state lines with his mark that he may find himself limited by what has been done under sanction of a power coordinate with that of the state of origin and paramount over the new territory concerned. In a word, that a state should be the unit to which courts should direct their judgments. Although the decision, first in the Hanover Mills Case, and later in the Rectanus Case, was in accord with this principle, the court, doubtless knowing Mr. Justice Holmes' views before reaching its decision, did not by any expression in its opinion concur in them, or, if concurring in conference, it did not pronounce them as law or base its decision on them. For some reason, it did not go that far. It follows that whether a first

adopter of a trade-mark may be restricted to territory less in area than that of a state is still an open question to be decided, we think, on the particular facts of the case.

The controlling facts of this case as affecting territory of the whole state of New Jersey as a field for Jacobs' use of his trade-mark are, in addition to those we have recited, that when the Iodent Company went into that state, in ignorance of his trade-mark, and expended its efforts and money in establishing and expanding a business for its tooth paste under the trademark, Jacobs did nothing. He knew what it was doing. Later, it is true, he notified it of his mark. That was all. He stood by and let the Iodent Company occupy territory which was normally his and which, had he exercised proper diligence, could not be wrested from him. Moreover, he not only stood by and watched the Iodent Company develop its trade throughout the State of New Jersey with what he claims, and what the court has found, to be his trade-mark, but he actually assisted in developing its trade by selling the plaintiff's tooth paste bearing his own trade-mark. On the law that trade-mark rights grow out of use, not mere adoption, Hanover Star Milling Co. v. Metcalf, supra, and on the principle recognized in law that there is no property in a trade-mark except as an incident to a business, we are inclined to the view that where, as here, one, owning a valid trademark and entitled to a given territory, fails by efforts which are reasonable in time and extent to project his business and the accompanying mark into that territory, he cannot by reason of the mere fact of ownership pre-empt that territory forever. We hold, on the facts, and on the law, bearing on them, that trade-mark rights, like other rights that rest on user, may be lost by abandonment, non-user, laches, or acquiescence, Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 418, 419, 36 S. Ct. 357, 60 L. Ed. 713, that Jacobs is estopped to eject the Iodent Company from the territory of New Jersey which he yielded, to assert trademark infringement by its acts and to recover its profits which, for years, he watched grow into potential damages.

All questions raised by the defendant's assignments of error on this appeal are resolved in favor of the plaintiff below save one. That one relates to costs, all of which the court taxed against the defendant.

This case was instituted by the Iodent Company. By the decree it was compelled to change its label, was excluded from a portion of the trade in the City of Paterson and was required to account to the defendant for the profits it had realized and the damages the defendant had suffered by reason of marketing tooth paste under the defendant's trade-mark in that city. Therefore it is clear that the plaintiff did not wholly prevail in its suit. While the taxation of costs in equity actions is largely within the discretion of the trial judge, we are of opinion, and are constrained to find, that in this case they should not have been taxed entirely against the defendant. Therefore we direct that either upon final decree or other final disposition of the case, the costs in the trial court be divided between the parties in such proportions as the learned trial judge shall in his discretion determine. The decree with this modification is, on the questions raised, affirmed, costs of this appeal (including cost of the record), where the defendant-appellant prevailed on one matter, to be taxed in the proportion of two-thirds against him and one-third against the plaintiff-appellee.