## ATLAS BEVERAGE CO. et al. v. MINNE-APOLIS BREWING CO.

### No. 11711.

Circuit Court of Appeals, Eighth Circuit.

July 22, 1940.

Rehearing Denied Aug. 16, 1940.

Walter W. Calvin, of Kansas City, Mo. (Herbert J. Jacobi, of Washington, D. C., Bert S. Kimbrell, of Kansas City, Mo., Jacobi & Jacobi, of Washington, D.C., and Calvin & Kimbrell, of Kansas City, Mo., on the brief), for appellants.

Charles M. Blackmar, of Kansas City, Mo., and Ralph E. Williamson, of Minneapolis, Minn. (John C. Benson and Raymond A. Scallen, both of Minneapolis, Minn., Kenneth E. Midgley, of Kansas City, Mo., Faegre, Benson & Krause and Williamson & Williamson, all of Minneapolis, Minn., and Michaels, Blackmar, Newkirk, Eager & Swanson, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.'

THOMAS, Circuit Judge.

The question for determination in this case is the ownership of the trade-mark "White Seal" when used on beer in the markets of Missouri and Kansas. The Minneapolis Brewing Company, plaintiff in the District Court, brought suit claiming ownership and seeking an injunction for infringement, an accounting for profits, and damages for unfair competition. The defendants answered claiming ownership in the defendant Atlas Beverage Company and by way of counterclaim seeking an injunction, an accounting and damages.

After a trial of the issues the court made findings of fact and conclusions of law, and entered a decree for the plaintiff and against both defendants, granting in full the relief prayed by plaintiff and dismissing the counterclaim.

The dispute originated in business relations between the plaintiff, hereinafter called the Brewing Company, and the defendant Atlas Brewing Company, hereinafter called Atlas. The Brewing Company is a Minnesota corporation engaged in the manufacture of beer at the City of Minneapolis, Minnesota. Atlas is a Missouri corporation with its principal place

of business at Kansas City, Missouri. It is engaged in distributing beer to retailers. The defendant Columbia Brewing Company is a Missouri corporation engaged in manufacturing beer at the City of St. Louis, Missouri.

The Brewing Company was organized about 1890. Its chief brand of beer was sold through the midwest under the trademark "Grain Belt." Early in 1935 the company decided to market its products in the states of Missouri and Kansas. Its representative then called on Atlas and induced it to "take on the sale" of its products. As a result of these negotiations a contract was entered into between the Brewing Company and Atlas under date of March 11, 1935, by the terms of which Atlas became the distributor for the Brewing Company in Kansas City, Missouri, and in Kansas City, Kansas. The contract provided among other things that Atlas should comply with all requirements of the company as to payments, cooperage, packages and containers; that the acceptance of orders "shall at all times be at the option of the Company"; that all products purchased should be delivered f. o. b. the company's plant; that freight charges should be paid by the distributor; that title to the bottles and cases should remain in the company; and that the distributor should not be an agent of the company.

It was found difficult to build up a market for "Grain Belt" beer in the Kansas City territory. It was made to sell to the consumers for 15 cents a bottle. They were accustomed to 10-cent bottles. The result of the distributor's efforts was unsatisfactory to both parties to the contract. Having learned the requirements of the market by this experience, the parties to the contract entered into an arrangement in the fall of 1935 to introduce a new beer put up in 10-cent bottles with a label carrying the "White Seal" trade-mark. The business continued under the terms and conditions of the contract of March 11, 1935. The new beer was a success almost from the beginning. In 1936, 20,646 cases were sold. The parties to the contract co-operated. Both spent money and used every effort to make it a success, with the result that in 1938 more than 200,000 cases were sold in Missouri and an affiliate of Atlas sold more than 30,000 cases in Kansas. The two distributors in Missouri and Kansas were handling about 10 per cent. of all the beer manufactured by the Brewing Company. With the company's consent their territory had been extended beyond the limits of the original Kansas City territory, and they were opening up new territory in both states.

In the fall of 1938 upon 30 days' notice the Brewing Company discontinued furnishing Atlas and its affiliate in Kansas with "White Seal" beer. Thereafter the Brewing Company continued to sell "White Seal" beer in Missouri under the same trade-mark and label and now uses the mark on beer manufactured by it and sold in the states of Missouri, Kansas, Iowa and Illinois.

Conceiving that it was the owner of the trade-mark "White Seal" Atlas entered into a contract with the defendant Columbia Brewing Company to manufacture for it a 10-cent beer and to label the bottles with a "White Seal" label almost identical in detail with the label theretofore furnished by the plaintiff. A dispute soon arose as to the ownership of the trade-mark, and this suit was commenced early in 1939.

The evidence shows that the words "White Seal" are a popular brand for many articles of merchandise. They have been registered as a trade-mark for cider, ale, ginger ale, natural waters, whiskey and beers; for wheat flour, refrigerators, paints, varnishes, corn syrup, paper, and white lead; and for castor oil, glue, meats, lard, baking soda, hose, paper bags, and sugar. Prior to the period of national prohibition it had been used on bottled beer manufactured and sold in Missouri by a predecessor of the defendant Columbia Brewing Company. At present and for many years it has been used as a trade-mark on whiskey sold in Missouri and elsewhere by the T. J. Pendergast Wholesale Liquor Company of Kansas City, Missouri, of which Atlas is an affiliate. It had been used on beer sold in Minnesota and the Northwest by breweries at Crookston and Little Falls, Minnesota, for one of which the plaintiff had manufactured it for a short time. At the times herein mentioned it was registered as a trade-mark for beer in Canada by the Kiewel Brewing Company, Ltd., a corporation, of St. Boniface, Canada.

Upon the trial of the case it was recognized by both parties that ownership of a trade-mark is dependent upon priority of appropriation and use, and that there is no property in a trade-mark ex-

cept as a right appurtenant to an established business or trade, when it becomes an element of good will. Columbia Mill Co. v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144; United Drug Co. v. Rectanus, 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141; Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1. Ownership in the instant case depends upon the facts of the arrangement made between the Brewing Company and Atlas when the mark "White Seal" was adopted for use on the label to be put upon the bottles used to contain the new beer when it was determined in the fall of 1935 to market a new 10-cent beer. Unfortunately the terms of the agreement in respect of the label were not reduced to writing. The plaintiff contends that it obtained the consent of the Kiewel Brewing Company, Ltd., of Canada to use its trade-mark, and of the brewery companies at Crookston and Little Falls, Minnesota, to use their trade-mark; and that having obtained the consent of these owners of the trade-mark, it adopted that trade-mark as its own and put it into use on the new beer. Atlas contends that it was familiar with the trade-mark "White Seal" used by its affiliate, the T. J. Pendergast Wholesale Liquor Company, on whiskey sold in Missouri and elsewhere and that it obtained consent of that company to use it on beer; and that it engaged the Brewing Company to manufacture the beer and furnish the labels for its exclusive use in Missouri and Kansas. Both parties introduced evidence in support of their respective contentions. In the course of the trial Atlas moved the court to permit and to make the T. J. Pendergast Wholesale Liquor Company a party defendant on the ground that that company had a joint interest in the trade-mark and was an indispensable party to the suit. The motion was overruled.

On this appeal the appellants rely upon sixteen assignments of error which counsel discuss under nine points. They are (1) that the T. J. Pendergast Wholesale Liquor Company should have been made a party defendant; (2) that the minute book of the T. J. Pendergast Wholesale Liquor Company was incidental only and could not determine ownership of the trade-mark; (3) that the record, disregarding the minute book, shows origination, prior adoption, and use of the trade-mark by Atlas; (4) that the Columbia Brewing Company owned and had not abandoned the trade-mark; (5) that the T. J. Pendergast Wholesale Liquor Company's rights to the use of the trade-mark in Missouri were prior to those of the plaintiff, and that it gave its consent to the use to Atlas; (6) that the Brewing Company is not the owner of the trade-mark and cannot maintain an action for its infringement; (7) that appellants have not been guilty of unfair trade practice; (8) that the question of the genesis of the trade-mark was not the decisive issue in the case; and (9) that the Brewing Company manufactured and sold beer to Atlas under the trade-mark and label of the Canada Company rather than that of the Little Falls, Minnesota, Company.

■ The trial of the case lasted five days. On the fourth day the defendants moved the court to permit or to make the Pendergast Company a party defendant on the ground that it is an indispensable party, "having a joint interest" in the trade-mark. The motion was overruled as "untimely." There was no error in so ruling. The pleadings did not show that the Pendergast Company had an interest in the trade-mark for use on beer. Atlas alleged in its answer and counter-claim that it was the owner of the trade-mark for such use and that it had obtained the consent of the Pendergast Company to use it for that purpose. That was all its evidence tended to prove. There was no evidence that the Pendergast Company retained or claimed any right to its use on beer sold anywhere. It was, therefore, neither a necessary nor an indispensable party, even though it may have been a proper party. Rules 19 and 20 of Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Interstate Refineries et al. v. Barry, et al., 8 Cir., 7 F.2d 548.

■ As indicated above the ownership of the trade-mark depends upon the arrangement or agreement between the Brewing Company and Atlas in the fall of 1935 when it was determined to introduce a new beer in 10-cent bottles to be manufactured by the Brewing Company and distributed by Atlas and its affiliate in Missouri and Kansas. The testimony upon this issue is voluminous and in hopeless conflict. It is unnecessary, therefore, to review it at length. The findings of the trial court upon such conflicting evidence can not be disturbed on appeal unless clearly erroneous. Rule 52(a) of

Rules of Civil Procedure. There is no basis in this case for an appellate court to hold that the trial court's findings are erroneous.

Points 2 to 9 inclusive of the points in appellants' brief relate to incidents of the conflicting evidence upon the main and only real issue. They have been given careful consideration and found to be without any controlling importance. We shall consider them briefly.

■ Point 2 relates to one of the numerous items of evidence introduced by appellants to sustain their claim that Atlas was the owner of the trade-mark "White Seal" and that it had obtained the right to its use on beer from the T. J. Pendergast Wholesale Liquor Company. The testimony referred to consisted of page 16½ of the minute book of the board of directors of the T. J. Pendergast Wholesale Liquor Company under date of March 1, 1935. These minutes recorded that on that date the board adopted the following resolution. "Be It Resolved, that the Atlas Brew Sales Company [now Atlas Beverage Company] be, and hereby is, authorized and permitted to use the trade-mark 'White Seal' on beer which now or hereafter may be manufactured for and on behalf of said Atlas Brew Sales Company."

It was contended by the Brewing Company that page 16½ of the minute book showed upon its face that it was an interpolation inserted long after the date which it bore. In commenting on the case the trial court under the heading, "Introductory Note" (not a part of the findings of fact) observed that an important question in the case is whether the genesis of the "White Seal" trade-mark was with the plaintiff Brewing Company or with Atlas. After further observing that that was a pure question of fact, the court said:

"The conduct and demeanor of all the witnesses, without exception, were those of honest, upright men, apparently having no desire save to tell the truth. The testimony of some, called by plaintiff, most forcibly supported plaintiff's theory, that the label, as between plaintiff and defendant Atlas, originated with plaintiff and belonged to plaintiff. The testimony of others, called by defendants, equally forcibly supported defendants' theory that the label, as between plaintiff and defendant Atlas, originated with the defendant and belonged to it. * * *

"For the purpose of showing that the formal consent of the Pendergast Company was given the minute book of that company was introduced by the defendants. The formal grant was there, at page 16½. It was signed by T. J. Pendergast as president of the Pendergast Company. But page 16½ so obviously was an interpolation, inserted in the book months after it purported to have been written, that it must be rejected altogether. And there was no explanation, although the apparent fraud immediately was called to the attention of all, both by court and counsel. * * *

"In the light of all the testimony considered as affected by the various tests of credibility, we have reached the conclusion—evidenced hereafter in the Findings of Fact—that the plaintiff's, not the defendants' theory as to the origin of the 'White Seal' label for the beer sold by Atlas is the correct theory."

It seems to be the contention of appellants that the court based his findings adverse to them solely upon his Introductory Note and the apparent interpolation of page 16½ in the minute book of the liquor company. The record does not sustain this charge. On the other hand the decision is clearly based upon the findings of fact as a whole made after considering all the evidence. Further, these contentions really present nothing for review in this court. They relate only to comment of the trial court and constitute no part of the findings or conclusions upon which the judgment rests. Hobbs-Western Co. v. Employers' Liability Assurance Corporation, 8 Cir., 102 F.2d 32, 34; United States v. Flower, 8 Cir., 108 F.2d 298, 301; United States v. Porter Fuel Co., 8 Cir., 247 F. 769, 770.

■ Point 3 relates only to the weight of the evidence. Appellants contend that the record as a whole, disregarding the minute book, shows origination, prior adoption, and use of the trade-mark. But the testimony is in utter conflict upon this question. As pointed out above, in this situation this court accepts the findings of the trial court. He had the advantage of seeing and hearing the witnesses; and a due regard for his judgment of their

credibility is not only reasonable, but it is required by the rules. Rule 52(a) of Rules of Civil Procedure.

■ The appellants' fourth contention is that the defendant Columbia Brewing Company was the legal owner of the trade-mark "White Seal" for beer in Missouri; that it had never abandoned it; and that by affiliation with Atlas it sanctioned and gave to Atlas the exclusive right to the use thereof in 1938. The evidence shows that the National Brewing Company of St. Louis, Missouri, registered this trade-mark for beer in the Patent Office for a period of 30 years on July 12, 1904. It was used until the period of national prohibition for use on beer and never afterwards. It expired July 12, 1934, and was not renewed. The Columbia Brewing Company had become the transferee of the registered mark by mesne transfers in 1933, but never used it.

The conduct of both appellants is inconsistent with the present contention. On November 15, 1938, Atlas and Columbia Brewing Company entered into a written contract by the terms of which Columbia agreed to supply Atlas and no others beer bearing the trade-mark "White Seal". The contract recited that Atlas had been duly authorized to use the trade-mark on beer by the T. J. Pendergast Wholesale Liquor Company; and it was stipulated that Atlas would save harmless and indemnify Columbia from all actions, judgments and expenses that may be caused or made against Columbia as a result of the use thereof. Clearly there was no intent to use the trade-mark the registry of which had expired four years previously and which had not been used on beer for more than ten years. By the terms of their contract appellants did not assume to be using the registered mark; but they agreed that they were using the mark which the T. J. Pendergast Wholesale Liquor Company had permitted Atlas to use. These undisputed facts are sufficient to sustain the finding of the trial court that Columbia had abandoned the registered trade-mark. See Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 31, 21 S.Ct. 7, 45 L.Ed. 60.

■ It is next urged that the T. J. Pendergast Wholesale Liquor Company's rights to the use of the trade-mark "White Seal" in Missouri were prior to those of the plaintiff, and that Atlas derived a superior right thereto through the consent of the liquor company. The evidence is clear that the liquor company did have a prior right to the use of the mark on whiskey, but it had never used it on beer. It adopted the mark for whiskey sold in Missouri in 1910. It has ever since continued such use. It also used it for a short time prior to 1928 during national prohibition on malt liquor. But certain undisputed facts support the finding of the court that the liquor company did not prior to 1935 own nor claim to own the mark for use on beer. At the time it was adopted for use on whiskey in 1910, beer was being manufactured and sold in Missouri under the registered trade-mark "White Seal" by the predecessor of the Columbia Brewing Company. Another company used the same mark on Champagne sold in Missouri; and, as shown above, it has been registered and used on many articles of merchandise. While the difference between whiskey and beer may not be as great as the difference between whiskey and ginger ale, the two articles are sufficiently distinctive that the owner of a trade-mark for whiskey can not under the circumstances of this case claim that it covers and includes beer. Ph. Schneider Brewing Co. v. Century Distilling Co., 10 Cir., 107 F.2d 699; France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304; W. T. Wagner's Sons Co. v. Orange Snap Co., 5 Cir., 18 F.2d 554.

■ Further, in this connection it should be observed that Atlas did not acquire ownership of the trade-mark "White Seal" for use on beer by the consent of the liquor company to use it for that purpose for the reason that the consent so given did not carry with it any good will. The liquor company did not use it on beer and did not transfer any part of its business to Atlas. It is an established rule of trade-mark law that a name cannot be assigned except in connection with "the particular business in which it has been used, with its good will, and for continued use upon the same articles or class of articles." Carroll v. Duluth Superior Milling Company, 8 Cir., 232 F. 675, 680, and cases cited supra.

■ The sixth, eighth, and ninth contentions of appellants, that the Brewing Company is not the owner of the trade-mark "White Seal"; that the genesis of the mark is not decisive of the issue; and that the label was derived from the Canada Company rather than the Little Falls,

Minnesota, Company, may be considered together. They all relate to the original adoption of the label by the Brewing Company in 1935. The genesis of the idea is material only as throwing light upon the transaction in 1935 when the Brewing Company began to manufacture beer labeled with the trade-mark "White Seal" and to distribute it in Missouri and Kansas through Atlas and its affiliate in Kansas City, Kansas. It is not claimed by the Brewing Company that it acquired ownership of the trade-mark by assignment from the Canada Company nor from the breweries at either Crookston or Little Falls, Minnesota. The consent to the use of their trade-mark by those breweries did not convey any part of their business nor of their good will. The evidence for the Brewing Company shows that it designed and adopted the label in 1935; that its name was printed on every label; that the name of Atlas appeared nowhere on the label; that it held itself out to the public as the manufacturer of the beer and the owner of the trade-mark from the beginning of its use in 1935; and that Atlas at no time until its contract was cancelled made any claim to the ownership of the trade-mark. During the period from 1935 to 1938 Atlas purchased the "White Seal" beer from the Brewing Company and resold it under the terms of its contract of March 11, 1935, without any claim of proprietorship whatever. The record supports the findings of the court upon all these points.

Finally, it is claimed that appellants have not been guilty of any unfair trade practices. This contention could be sustained only if it were found that Atlas was at all times owner of the trade-mark. After the contract between the Brewing Company and Atlas was terminated Atlas continued to sell "White Seal" beer to the same taverns and customers who had purchased "White Seal" beer manufactured by the Brewing Company without informing them that the beer delivered was a different beer manufactured by a different brewery. It was shown that the Brewing Company's signs were left at places where the beer was sold and that there was actual confusion in the minds of purchasers. This was sufficient to sustain the finding of the court.

The evidence supports the findings and judgment of the court. The judgment is accordingly affirmed.