### E. F. PRICHARD CO. et al. v. CONSUMERS BREWING CO.

### No. 9293.

Circuit Court of Appeals, Sixth Circuit.

June 28, 1943.

Frank Zugelter, of Cincinnati, Ohio, Richard Priest Dietzman, of Louisville, Ky., and Robert M. Odear, of Lexington, Ky., (Keenon, Huguelet & Odear, of Lexington, Ky., on the brief), for appellants.

Frank Zugelter, of Cincinnati, Ohio, and Stanley Chrisman, of Covington, Ky., for appellant Heidelberg Brewing Co.

Sanford A. Headley, of Cincinnati, Ohio, (James G. Headley, of Cincinnati, Ohio, and Joseph J. Bradley, of Lexington, Ky., on the brief), for appellee.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The Consumers Brewing Company was, by the district court, awarded an injunction against the use, by appellants, of a trademark on beer products, known as the "Olde Towne Lamplighter" label, together with a decree for an accounting. The E. F. Prichard Company claims the right to the use of the trade-mark in the territory south of the Ohio river. The Heidelberg Brewing Company acted under contract with the Prichard Company in brewing, bottling, and labeling the beer for the latter company, and was included in the injunction and subjected to the accounting.

In 1933, after repeal of the prohibition law, E. F. Prichard entered the beer business in Lexington, Kentucky, as a distributor of the products of several breweries. He, thereafter, became interested in the possibility of organizing a brewery, using for such purpose, the properties of an old brewery in Lexington, which had not been manufacturing beer for many years. This brewery was known as the Lexington Brewing Company, and Prichard ascertained that it was owned by the Dixie Race Track Company. He then found that the stock in this latter company was largely held by the members of the Bruckmann family, or the Bruckmann Company, a brewing concern located in Cincinnati.

Prichard, thereupon, went to Cincinnati, where he interviewed William Bruckmann, vice president of the company, and carried on negotiations directed to a possible sale of the brewery properties in Lexington. During these negotiations, Prichard came in contact with John C. Bruckmann, president of the Bruckmann Company, and, thereby, on March 1, 1934, became associated with the Bruckmann Company, as manager of its Lexington and southern division in charge of the sale and distribution of the company's products in central Kentucky and adjoining states.

During this time—over the course of more than a year—John C. Bruckmann discussed with Prichard, his proposition with regard to the Lexington brewery. On March 1, 1935, John C. Bruckmann severed his connection with the Bruckmann Company, and became general manager and vice president—later president—of the Consumers Brewing Company, appellant herein, located at Newark, Ohio. Before he left the Bruckmann Company, John C. Bruckmann advised Prichard of his plans and told him that the Lexington property was going to be sold; and, as Prichard testified, "that we would open the Lexington Brewing Company; and * * * that he wanted me to go with him." Shortly after John C. Bruckmann left the Bruckmann Company, Prichard also discontinued his association with the company, and Bruckmann and Prichard entered into business relations as partners, under the name of John C. Bruckmann Company, for the purpose of engaging in the distribution of the products of the Consumers Brewing Company throughout central Kentucky and adjoining states.

For some time, Prichard and John C. Bruckmann were associated in this partnership in carrying out the arrangement which they had entered into with regard to the distribution of the products of the Consumers Brewing Company. Prichard drew a salary of $250 a month, and had $50 a month for expenses. He stated that he had a partnership interest in the concern and that his understanding with Bruckmann was that they "would work into the Lexington Brewing Company." The trial court found that, as to the John C. Bruckmann Company, Prichard and Bruckmann were engaged in a joint enterprise. It appears that Prichard at first operated the business on behalf of the partnership, in his own name, and later, in April, 1935, under the name of the John C. Bruckmann Company.

In 1934, while Prichard was reading an old copy of a Dickens' novel, his attention was attracted to one of the illustrations— a quaint picture of a man wearing a tall hat, and lighting an old-fashioned street lamp. It immediately occurred to him that the picture would serve as a design on a lable for ale or beer. He, therefore, employed an artist to copy the picture; had

plates made for its reproduction; and caused a number of the labels to be printed with the picture, referred to in this case as the "Lamplighter" design.

In the first part of 1935, Prichard went to the offices of the Consumers Brewing Company at Newark, Ohio, where he had a conference with Bruckmann, then president and general manager of the brewing company, as well as a partner of Prichard in the distributing company at Lexington. Prichard showed Bruckmann the new labels with the "Lamplighter" design, and after some talk, they determined upon the addition of the name "Olde Towne" to the label. The district court found that they then agreed upon certain terms as to the use of the label. The Consumers Brewing Company was to place the label upon the beer which it was selling to the partnership in Kentucky, as well as upon its own beer, which it was selling in Ohio. The label was to bear the name "Newark" in addition to "Olde Towne" on the Lamplighter label.

However, it was also agreed that when the new Lexington Brewing Company was organized and producing beer, the new company would have the exclusive use of the Olde Towne Lamplighter label, prefixed by the name "Lexington," for the distribution and sale of its product in the states south of the Ohio river; that the Consumers Brewing Company would have the use of the Olde Towne Lamplighter label, prefixed by the name "Newark," for the product sold and distributed by it in the territory north of the Ohio river; and that, further, Prichard would have the right to take back his design for his own exclusive use, when he wished. In 1933, Prichard, while in business for himself, had bought two or three carloads of beer from Harrison, New Jersey; and about the same time, he had received a letter from a friend in Elizabeth, New Jersey, quoting him prices on carload lots of beer, on which he could place his own label. The letter also gave Prichard a list of names he could use on the beer, including the name "Old Town." While the origin of the name "Olde Towne," as used in the transactions in this case, is vague and disputed, Prichard stated that he got the suggestion for "Olde Towne" from the letter he received from New Jersey in 1933. But as we view the issues in this case, the origin of this particular name is unimportant.

Nevertheless, on the understanding above recited, the partnership continued to buy its beer from the Consumers Brewing Company, which was now marked with the "Newark Olde Towne Lamplighter" label —until 1938, when the Lexington Brewing Company was incorporated. This practice of a concern, in purchasing beer from a brewery and then labeling and selling it under a different name—sometimes, as its own beer—appears, from the evidence, to have been a common method of marketing brewery products.

The Lexington Brewing Company was organized with the intention of manufacturing its own beer; and it appears from appellee's witnesses that it was the further plan, at the time of the organization of this company, to use the Olde Towne Lamplighter label on its product. The evidence shows that it was agreed at a meeting of the Lexington Brewing Company directors, and others interested in financing the new company, that Prichard was the owner of the Lamplighter label. Bruckmann, who was president of the new Lexington Brewing Company, caused a large amount of the stock therein to be issued to Prichard, who became vice president and general manager. This stock was issued to Prichard in accordance with the plan of the parties to organize a brewery in Lexington, on the premises of the defunct Lexington Brewing Company.

The new Lexington Brewing Company succeeded to the property, clientele, and distributing business of the joint venture which had been conducted by Bruckmann and Prichard under the name of the John C. Bruckmann Company; and it continued to buy its beer from the Consumers Brewing Company, with the Olde Towne Lamplighter label. The prior John C. Bruckmann Company, and the new Lexington Brewing Company, were entirely separate from the Consumers Brewing Company. Both bought the beer for their distribution from the last-named company, on open account, rather than on consignment.

Here, it may be remarked that the entire association of Prichard with Bruckmann and the Consumers Brewing Company, appears, from the evidence, to have arisen out of his desire and plan to procure the premises of the old Lexington Company, manufacture beer therein, and distribute the product of such brewery as Lexington beer. Prichard's first contact with John C. Bruckmann resulted from his proposition to this effect. He entered into partnership with Bruckmann, with the ultimate

objective of organizing a company and taking over the Lexington premises, which were owned by a corporation in which the Bruckmann family had controlling interests. Prichard's origination and design of the Lamplighter label were suggested and inspired by the thought that this would be a successful label to use on beer that his projected company would manufacture and distribute. His agreement with Bruckmann, as representing the Consumers Brewing Company, that the Olde Towne Lamplighter label be attached to the products sold by that company to the partnership for distribution in Kentucky and adjacent states, was for the purpose of building up a clientele through this brand of beer, which would be available when the new Lexington Brewing Company was organized; and Prichard was particular about reserving his right to the use of the label in case such a new brewery was not organized for the manufacture and sale of beer.

Although, as has been mentioned, the new Lexington Brewing Company was organized as a corporation in 1938, it apparently was never able to finance the purchase of the premises of the old Lexington Brewing Company; and accordingly, the new company never undertook the manufacture of beer. In the latter part of 1939, after some dispute or trouble with others associated in the new company, Prichard left the company and, thereafter, organized a new corporation, called the E. F. Prichard Company, one of the appellants herein, of which he became president and general manager. This latter company proceeded, under the direction of Prichard, to market its beer with the Olde Towne Lamplighter label, south of the Ohio river, predicating its right so to do on the understanding between Bruckmann, as representing the Consumers Brewing Company, and Prichard. Within a few days after leaving the Lexington Brewing Company, Prichard demanded that the Consumers Brewing Company cease using the Lamplighter label.

In seeking an injunction against such use of the Olde Towne Lamplighter label by the E. F. Prichard Company, Consumers Brewing Company disputes that Prichard originated the Lamplighter label and denies that there was any such contract between Prichard and Bruckmann, as Prichard claims. Furthermore, it insists that Prichard could not reserve his rights to such a design in the label, in view of the fact that he agreed to permit the Consumers Brewing Company to use it, and did not establish a use in himself, nor did he use the label in any way until after the elapse of many years; and that, by virtue of using the label as a trade-mark for a long period of time, spending large sums upon its exploitation and the development of good will thereunder, the Consumers Brewing Company became entitled to the exclusive use of the label for its own products.

The district court found, contrary to appellee's contentions, that Prichard originated the Lamplighter design as a label for brewery products, and that he consented that the Consumers Brewing Company use the design as part of its trademark, with the understanding that if the Lexington plant later should start production, the composite trade-mark, composed of the "Olde Towne" name and the "Lamplighter" design, might be used on the beer produced and sold by the Lexington plant, the appellee to confine its sales to the territory north of the Ohio river, with its product identified by the word "Newark" on its label, and the Lexington plant to operate in territory south of the Ohio river, with its product differentiated from that of the complainant by placing the word "Lexington" on the label in place of "Newark"; and "with the further understanding that Mr. Prichard would have the right to take back his design for his own exclusive use as a label at any time he wanted it."

The trial court, however, found that there was no evidence of a general or continuous use of the Lamplighter design by Prichard under such circumstances of publicity or continuity as would tend to identify it as the distinguishing mark "for his particular goods"; that the contract or understanding between Prichard and Bruckmann was not effective to vest or create in Prichard any present or future right "to or in the words Olde Towne," coupled with the Lamplighter design, as a trade-mark; and that no right to the use of the trade-mark passed to or vested in E. F. Prichard Company, by virtue of an assignment or transfer by Prichard, for the reasons that he had acquired no transferable property right in the mark, and that the transfer or license of a naked trademark is void.

The district court concluded that the Consumers Brewing Company had used the

words "Olde Towne" coupled with the Lamplighter design, for several years and that such use had been general, continuous, public, and extensive, in the states of Ohio, Kentucky, Tennessee, Virginia, and West Virginia; that by priority of such use, the Consumers Brewing Company had acquired exclusive right to the use thereof as a trade-mark for ale and beer; and that the use of a similar trade-mark by the E. F. Prichard Company, constituted infringement of appellee's trade-mark rights and unfair competition.

From the foregoing, it appears that the district court found in appellants' favor on all of the important issues of fact; and upon a review of the record, we agree that such findings are sustained by the evidence. But the issues of law were determined in favor of the appellee, and we, therefore, confine our discussion largely to these legal questions.

We come, then, to the conclusions of law of the district court, that may be briefly stated in the following language: Prichard never acquired a right in the use or licensing of the label, because he never used it as the distinguishing mark of his goods; and the contract between Prichard and Bruckmann was ineffectual to reserve in Prichard a right to use the label thereafter in another business. The Consumers Brewing Company acquired the right to the trade-mark or label, by user.

While the trade-mark in question was registered in accordance with the federal law, several years after its established use, we consider that fact of no importance in determining the issues in this case. However, in the controversy before us, some brief observations with regard to the nature of trade-marks and trade labels, would seem apposite.

■ We have before us a case involving the right to a common law trade-mark. This right exists independent of the statute, registration simply constituting prima facie evidence that the registrant is entitled to the .mark. Phillips v. Hudnut et al., 49 App. D.C. 247, 263 F. 643. Trademarks are not dependent on statutory enactment, but arise out of common law from prior exclusive appropriation and use. Registration is not controlling in a suit involving common law rights to a registered mark or in a suit for unfair competition involving its use. United States Ozone Co. et al. v. United States Ozone Co. of America, 7 Cir., 62 F.2d 881. In a suit in a federal court to enjoin wrongful use of a trade name, whether it was used in interstate commerce or registered as a trade-mark under act of Congress, is immaterial; the real question is whether the mark was actually adopted and used by the plaintiff. The title to a trade-mark is independent of its registration. Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., D.C. Pa., 20 F.Supp. 703. As recognized by the common law, a trade-mark is generally the growth of a considerable period of use rather than a sudden invention; and the exclusive right to it grows out of its use and not its mere adoption. In re Trade-Mark Cases, 100 U.S. 82, 25 L.Ed 550. The purpose of the trade-mark law is to permit people to build up businesses around trade names by which articles are known, and establish good will; Champion Spark Plug Co. v. Champion, D.C. Mich., 23 F.Supp. 638, and it is the good will and not the mark, that is protected. Pulitzer Pub. Co. v. Houston Printing Co., D.C., 4 F.2d 924, affirmed 5 Cir., 11 F.2d 834, certiorari denied, 273 U.S. 694, 47 S.Ct. 91, 71 L.Ed. 844.

■■ This case is concerned with the question whether Prichard ever established, by user, the right to the trade-mark, as well as whether a license to others to use the mark, was valid. It may be observed that a trade-mark is not a subject of property except in connection with an existing business or trade. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317. See, also, Caigan v. Plibrico Jointless Firebrick Co., 1 Cir., 65 F.2d 849, certiorari denied, 290 U.S. 668, 54 S.Ct. 88, 78 L.Ed. 577; Jacobs v. Iodent Chemical Co., 3 Cir., 41 F.2d 637; Certain-Teed Products Corp. v. Philadelphia & Suburban Mortgage Guarantee Co., 3 Cir., 49 F.2d 114. It has no existence in gross, but is inseparable from good will and, therefore, appurtenant to the carrying on of a particular business; and it functions only in connection with an existing business. Continental Corp. v. National Union Radio Corp., 7 Cir., 67 F.2d 938; Ward Baking Co. v. Potter-Wrightington, Inc., 1 Cir., 298 F. 398; Lawrence-Williams Co. v. Societe Enfants Gombault et Cie, 6 Cir., 52 F.2d 774 certiorari denied, 285 U.S. 549, 52 S.Ct. 406, 76 L.Ed 940; Andrew Jergens Co. v. Bonded Products Corp., D.C., 13 F.2d 417, certiorari denied, 275 U.S. 572, 48 S.Ct. 204, 72 L.Ed. 432. Otherwise stated, there is no property in a trade-

mark except as a right appurtenant to an established business or trade, when it becomes an element of good will. Atlas Beverage Co. v. Minneapolis Brewing Co., 8 Cir., 113 F.2d 672.

 It is true, as contended by appellee, that a naked license to use a trademark is of no more validity than a naked assignment thereof. Lea v. New Home Sewing Machine Co., C.C.N.Y., 139 F. 732. But a trade name, like a trade-mark, may be assigned, licensed, or lent, as long as it remains associated with the same product or business with which it has become associated in the public mind. An owner of a trade name who lends the use of such a trade name, may resume its exclusive use according to the terms of the lending. Cardinal v. Taylor, 302 Mass. 220, 19 N.E.2d 58. A manufacturer of a certain commodity, by agreeing to allow the purchaser thereof the use of its trade name for a certain period, did not lose the exclusive right to the name after the expiration of the term; J. F. Rowley Co. et al. v. Rowley, 3 Cir., 18 F.2d 700; and one may introduce his trade-mark and create a demand for his variety of goods in a new territory, by licenses. Vermont Maple Syrup Co., Inc., v. Johnson Maple Syrup Co. et al., D.C. Vt., 272 F. 478.

 Some of the cases seem to indicate that unless one manufactures or produces the goods bearing the trade-mark, no right thereto results. An examination of such authorities reveals, however, that they were concerned with the discussion of manufacturers who owned or assigned trade-marks, and referred only to such given factual situations. It is the law that one need not himself manufacture goods to acquire a valid trade-mark, even though the name of the real manufacturer is used as a part of the device. Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed 526. It is sufficient, as regards, the claim of ownership in the trade-mark, that the goods are manufactured for the claimant, or that they pass through his hands in the course of trade and that he gives to them the benefits of his name and business style. Southeastern Brewing Co. v. Blackwell, 4 Cir., 89 F.2d 607. See, also, George B. Graff Co. v. H. C. Cook Co., 55 App. D.C. 136, 2 F.2d 938. And it is not important that a party does not himself manufacture the articles which he sells, and upon which he places his trade-mark. It is sufficient that the goods are manufactured for him

and that he owns or controls the goods which he offers for sale, and upon which he places a trade-mark or trade name. Charles Broadway Rouss, Inc., v. Winchester Co., 2 Cir., 300 F. 706.

We come, then, to the rights of Prichard to the trade label he formulated with the Lamplighter design. The result of the agreement between the partnership of Bruckmann and Prichard, and the Consumers Brewing Company (of which Bruckmann was president and general manager), was that the partnership bought the beer outright from the Consumers Company; and the distinctive labels were attached by the Consumers Company to the products sold to the partnership, pursuant to the agreement that this would be done for the partnership.

It should be remarked that the district court did not expressly find that the parties agreed that the Consumers Brewing Company should attach the labels—for the partnership—on the product sold to it, which were distributed south of the Ohio river. But the trial court did not find to the contrary. Prichard's evidence was to the effect that the Consumers Brewing Company used the label, on the understanding that the partnership would have the brewery produce the beer products for it "as a stepping stone to opening the Lexington Brewing Company"—with the further understanding that Prichard would have the label back at any time he wished, if the Lexington Brewing Company did not get into production. He further testified that the Consumers Brewing Company placed the label on the products sold to the partnership, only by his permission. This evidence is so fortified by the circumstances of the case and the conduct of the parties, that we accept it as fact, and so arrive at the conclusion that the labels were attached to the products sold to the partnership by the Consumers Brewing Company, acting in this particular transaction in the stead and on behalf of the partnership.

The beer thus labeled, was sold by the partnership, and through such sales under these labels, a valuable property right was acquired in the trade-mark of the Olde Towne Lamplighter label in the territory south of the Ohio river. We here confine the discussion to this territory, as this was the area expressly reserved by the partnership.

 It is argued by appellee that the trade-mark in question was not existent at

the time of the agreement as to its use; and this contention raises the question as to the validity of the agreement, and whether Prichard could, by contractual stipulations, reserve rights in the mark to himself, without a showing of prior use. On this phase of the controversy, the law of contract is controlling, rather than principles applicable to trade-mark law; and there appears no reason why a party, commencing a business, cannot secure a right to a trade-mark which he adopts in the incipient stage of a new enterprise. As said by Mr. Justice Holmes: "A trade-mark is not only a symbol of an *existing* good will although it commonly is thought of only as that. Primarily it is a distinguishable token devised or picked out *with the intent to appropriate it* to a particular class of goods and *with the hope that it will come to symbolize good will.* Apart from nice and exceptional cases and within the limits of our jurisdiction *a trademark and a business may start together,* and in a qualified sense the mark is property, protected and alienable, although as with other property its outline is shown only by the law of torts, of which the right is a prophetic summary." (Italics supplied.) Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 632, 47 S.Ct. 481, 482, 71 L.Ed. 810.

There was, then, adoption and sufficient subsequent use to establish the trade-mark. The right to the exclusive use of this trade-mark, after it was established, however, was not in the Consumers Brewing Company in the area south of the Ohio river. That company had agreed, through its president, that Prichard would be the owner and that if a Lexington brewery were organized and went into production, the label would be used by it on its products sold south of the Ohio river; and that if such brewery were not organized, Prichard would still be the owner of the label. The beer that was sold by the partnership was its own beer, that it had purchased from the Consumers Company. It was in no way acting as agent for the brewery; it was promoting the sale of the "Olde Towne Lamplighter" beer in order to build up sales and good will for the time when it would be producing and selling beer under a new corporation organization; and all of the foregoing must be deemed to have been within the knowledge of the Consumers Brewing Company by virtue of the transaction carried on by its president and general manager.

It is claimed that the contract between Bruckmann, as representing the Consumers Company, and the partnership, composed of himself and Prichard, was not binding on the Consumers Company. We do not believe such a contention is meritorious. Bruckmann was president of the Consumers Company. The contract appears to have been made in the usual course of business, and within the scope of his authority. He did not surrender any rights that the company was entitled to, nor subject it to any liability. He contracted for the sale of beer to the partnership. The agreement resulted in several years of substantial and prosperous business for the brewing company—which was not, at the time of the agreement, in an especially flourishing condition. The Consumers Company had never known of the Lamplighter label before the contract and had never used the name of Olde Towne before that time. Furthermore, as the result of the contract, the Consumers Company received the right to the exclusive use of the important property right in the label as its own, for the sale of its product in all the area north of the Ohio river. The Consumers Company did not distribute its own products south of that line. The only right it recognized in Prichard, was to the label, which he had designed and disclosed to the Consumers Company; and this right it recognized for use only south of the Ohio. Prichard himself was valuable to the brewing company in the sale of its products. He was experienced in the business and provided an important outlet for the sale of the commodity manufactured by the brewery.

It would be highly inequitable to set aside such a contract, and conclude that inasmuch as the Board of Directors had not been advised of its conditions, the company—just because it attached the labels to the beer bottles and cartons of the product sold to the partnership—became entitled to the exclusive use of the label south of the Ohio river, contrary to the express terms of the understanding with Prichard. Any director who inquired where the Lamplighter design came from, or how the company happened to be using it, would undoubtedly have found all about the details of the transaction. The fact that money was spent by the Consumers Company in developing the value of the label, does not derogate from Prichard's rights merely because the directors did not know of the details of the agreement. Prich-

ard's partnership, and the successor corporation of which he was general manager, expended money to exploit the label and build up good will for the projected business in Lexington and in the territory south of the Ohio river. There appear no plausible grounds for holding the contract in question invalid.

■ The contract between Bruckmann (as representing the Consumers Company) and Prichard, being established as valid, with regard to the use of the trade-mark, a further observation should be made as to Prichard's ownership of the label. Whether the contribution of the name "Olde Towne" to the Lamplighter design emanated from Prichard, or from Bruckmann —individually, or as representing the Consumers Company—the partners could agree on the ownership of the label. Prichard had been managing a beer business for some years. At first, he carried it on individually; later, in partnership. His association with the business was such that a label which he originated for the sale of his products or those of the partnership, could be established as a trade-mark through use. His partner, in consideration of his originating the label for the benefit of the partnership, could enter into an agreement with Prichard that such a trade-mark should belong to him; and an agreement to this effect would result in his proprietorship thereof. The company from which he purchased beer could also agree that the mark—to which such company made some additional contribution—should also be his, within the district in which he sold the beer products.

■ A partner may be the owner of a trade-mark used by the partnership; if he licenses the partnership to use his trade-mark, he does not thereby grant a naked license, merely because he discontinues the operation of an individual business using the mark. An agreement between the owner of a trade-mark and a member of a firm to whom he had granted a license to use it, that, when such member retired from the firm, all the rights and privileges thereto should revert to the owner of the trade-mark, was a valid agreement that on such retirement, the use of the trade-mark should cease; and a licensed use, in the business of a firm, of the trade-mark owned by one partner, does not place the trade-mark in the firm as a part of its assets, nor make it partnership property. Batcheller

■

v. Thomson, 2 Cir., 93 F. 660. One who, is the owner of a trade-mark does not, by entering a partnership and permitting the use of the trade-mark by the partnership, transfer his interest in the trade-mark to the firm. Kidd v. Johnson, 100 U.S. 617, 25 L.Ed. 769.

If Prichard had been the owner of his business, and had gone to the Consumers Company with a sufficient supply of labels, claiming them as his own, and requesting the company to place them on all the beer sold to him, he certainly would have become entitled to the trade-mark and good will which he thereafter built up through such use of the label. The fact that he had a partner who agreed that the ownership of the label should be in Prichard, in consideration of his license to the partnership, would not detract from his ownership; and, likewise, an agreement between the Consumers Company and Prichard that the name "Olde Towne" should be attached to the label of all beer purchased by him, and that, in consideration of his continued purchase of beer (until his new brewery was organized), he would be the absolute owner of the composite label for the sale of beer products south of the Ohio, is equally effective to vest ownership of the label in Prichard, subject to the stipulated limitations. If the contract as found by the court did not recite the consideration, as above mentioned, a substantially similar consideration can be said to be implicit in the agreement.

It should be pointed out that we are not here concerned with the claim to a trade-mark by a person who is not associated with the business in which such mark is used. The recognition of ownership of the label in Prichard was inextricably bound up with his interest in an operating business which adopted and used the label. The mark, so adopted and subsequently used, was appurtenant to the business conducted by him as a partner.

■ The appellee bases its case upon the supposition that whatever the assignments or licenses of use of the label by Prichard, they were merely naked assignments or licenses. From all that appears in the record, this is true with regard to Prichard's license to the Consumers Company, permitting it to use the trade-mark for the sale of its own products north of the Ohio river. Prichard was operating no business, nor associated with any busi-

ness operating in that territory. While a trade-mark extends to every market where the trader's goods have become known and identified by his use of the mark, the mark itself cannot travel to markets where the trader does not offer, or has not offered, the articles for sale. See Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; American Broadcasting Co. v. Wahl Co., 2 Cir., 121 F.2d 412. Such permission for use north of the Ohio river, would be a naked license and void, resulting in an abandonment by Prichard of any rights to the mark in that area.

But the fact that the stipulated license to use the label was a naked one north of the Ohio river, does not require a holding that Prichard granted a naked license to the Consumers Company to use the mark south of the Ohio river. In that territory, Prichard was associated with a going business, in which he desired, and required, a mark for the product purchased and owned by his company, and sold in that territory; and for that purpose, by the agreement, he had arranged to have the Consumers Company place the labels on the products which he purchased, and reserved the trade-mark in that area for himself. Whatever the permission given by him as to this territory, it was, in effect, only a permission to label the products which he bought, for the benefit and purposes of the business with which he was associated.

Any claims that might be asserted against the right of Prichard to ownership of the label—under the trade-mark law—are rendered of no avail in view of that fact that appellee is estopped to advance such contentions, because of the contract in which it was agreed that the ownership of the mark was to be in Prichard. As between parties claiming the right to a trade-mark, it is unnecessary to determine whether the mark was adopted and used in such a manner as to entitle one of the parties to be protected in its exclusive use, where the parties entered into a contract in which they agreed that the trade-mark would belong to one of them, who would have the right to its exclusive use. In such a case, the party who has agreed that the other shall be the owner of the trade-mark, is estopped from raising questions with regard to adoption and use; and the inquiry is limited to determining whether the terms of the contract have been violated. Ft. Stanwix Canning Co. v. William McKinley Canning Co. et al., 49 App.Div. 566, 63 N.Y.S. 704. See, also, Lawrence-Williams Co. v. Société Enfants Gombault et Cie, 6 Cir., 22 F.2d 512, 514; Waukesha Hygeia Mineral Springs Co. v. Hygeia Sparkling Distilled Water Co., 7 Cir., 63 F. 438.

From the greatly preponderating evidence, it appears that the partnership had a license to use the trade-mark under certain conditions; and that the Lexington Brewing Company, likewise, used the mark, with the understanding that Prichard continued to be the owner of it.

As between the parties to this suit, it is our conclusion that Prichard is the owner of the "Olde Towne Lamplighter" trade-mark for use on beer products south of the Ohio river, where user thereof has been established; that north of the Ohio river, the Consumers Brewing Company is the owner thereof, in the area where such user has been established; that appellee is not entitled to the injunctive relief, prayed for and granted, against the use of the trade-mark by the Prichard Company in the southern territory; and that appellant Prichard Company is entitled to an injunction, in accordance with the prayer of its cross-bill, against the appellee, to restrain its use of the trade-mark, south of the Ohio river, where the mark has been established by Prichard.

The decree of the district court in favor of the Consumers Brewing Company is reversed, with directions to dismiss the bill of complaint against the Heidelberg Brewing Company, and to enter a decree in favor of the E. F. Prichard Company, in accordance with this opinion.