FT. STANWIX CANNING CO. v. WILLIAM McKINLEY CANNING CO. et al.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. TRADE-MARKS—INFRINGEMENT—ESTOPPEL.

The defendants having agreed for a valuable consideration that certain labels should thereafter be the property of plaintiff, and that the defendants would not infringe on their use, they were estopped from asserting that the symbols and devices composing the labels were not such as were subject to protection solely as trade-marks.

2. SAME—SIMILARITY OF DESIGN.

On the left end of a label used by plaintiff on canned goods was a picture of a flag, with the words, "F. S. Flag," directly over it. In the center of the label, within a gilt rim, were the words, "Packed at Rome, N. Y." On the right end was a picture of vegetables. Defendants adopted a label of the same size, with a flag on the left end of about the size as on plaintiff's label, but of a different design, with the words "Our Flag" above. In the center, within a gilt rim, was an eagle's head. On the right end

was a picture of vegetables, substantially as on plaintiff's label, with the words "Our Flag" above. *Held*, that defendants' label was an infringement on plaintiff's, being sufficiently similar to deceive a purchaser of ordinary caution, and to injure plaintiff's trade. .

3. SAME.

On the left end of a label used by plaintiff on canned goods was the name of the firm within a gilt scroll, with the words, "Packed at Rome, N. Y.," beneath. In the center of the label was a picture of a Roman shield, helmet, and other devices. On the right end was a picture of vegetables, and above, in red letters, with gilt edges, were the words, "Pride of Rome." Defendants adopted a label of the same size, having on the left end substantially the same picture as was on the right end of plaintiff's label, with the words, in similar lettering, "Pride of the Home" above. In the center of the label was a picture of a Roman soldier in armor. On the right within a wreath were the words, "Packed at Rome, N. Y.," though the goods were not packed there. Beneath the wreath was the device of shield and helmet, as on plaintiff's label. *Held*, that the defendants' label was an infringement on plaintiff's, the similarity being sufficient to deceive the ordinary customer.

Appeal from special term, Oneida county.

Bill by the Ft. Stanwix Canning Company against the William McKinley Canning Company and J. Lloyd Jones. There was an interlocutory judgment for plaintiff, and defendants moved for new trial, and appeal. New trial denied, and judgment affirmed.

By the judgment the defendants were adjudged to be guilty of infringing the plaintiff's trade-marks or labels known as the "F. S. Flag" or "Sweet Kernel" and "Pride of Rome" by the adoption and use by them of trade-marks or labels known as "Our Flag" and "Pride of the Home," and were perpetually enjoined from using said trade-marks. It was also adjudged that the plaintiff is entitled to an accounting by the defendants of their profits and gains resulting from said infringement, and a referee was appointed to take such accounting, and to ascertain and assess the damages sustained by the plaintiff on account thereof. The action was begun on the 16th day of February, 1897, and the only issue raised by the pleadings is, do certain trade-marks or labels adopted and used by the defendants infringe upon certain trade-marks or labels owned and used by the plaintiff? It is conceded that the two trade-marks or labels designated in the judgment as "F. S. Flag" or "Sweet Kernel" and "Pride of Rome" were owned and used by the plaintiff prior to and at the time of the commencement of the action, and that the two trade-marks or labels designated as "Our Flag" and "Pride of the Home" had been adopted and were used by the defendants to mark and distinguish their goods sold and offered for sale to the public. The important question, therefore, to be determined upon this appeal is, do the two trade-marks or labels adopted and used by the defendants, and known as "Our Flag" and "Pride of the Home," infringe upon the two trade-marks or labels owned and used by the plaintiff, known as "F. S. Flag" or "Sweet Kernel" and "Pride of Rome"?

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Adelbert Moot, for appellants.

J. S. Baker (William F. Cogswell and William L. Marcy, of counsel), for respondent.

McLENNAN, J. For several years prior to the 24th day of January, 1896, the defendant J. Lloyd Jones, Bert Olney, and James P. Olney owned substantially all the capital stock of and jointly controlled four corporations organized for the purpose of packing vegetables of various kinds, and other products, in tin cans of dif-

ferent sizes, and selling the same to the public, viz. the Ft. Stanwix Canning Company (this plaintiff), which had its plant and place of business at Rome, N. Y.; the William McKinley Canning Company (the defendant company), its plant and place of business being located at Lenox, Madison county, N. Y.; the Fredonia Canning Company, carrying on its business at Fredonia, N. Y.; and the Rome Canning Company, which owned a canning plant at Rome, N. Y., but which had not been engaged in business since the fall of 1893, prior to the commencement of this action; and in fact said last-named corporation, its business and property, had been absorbed by the plaintiff company early in 1894, and from that time until 1897 it had no active existence. On said 24th day of January, 1896, the defendant Jones and the Olneys determined to separate their business interests, and to discontinue their joint ownership and control of the properties of the four corporations above named, and to that end they made or caused to be made and entered into three contracts,—one between Bert Olney and the defendant Jones; one between the plaintiff company, the defendant company, and the Fredonia Company; and the other between the plaintiff company and the defendant Jones. It may be said, generally, that by said agreements the defendant Jones became the owner of the McKinley, Fredonia, and Rome Companies, the Olneys transferring to him all their capital stock in said corporations, and relinquishing all their right, title, and interest in and to their property, respectively, with the exception of certain trade-marks or labels; and Bert Olney, for himself, covenanted and agreed to procure to be conveyed to Jones the property and plant of the Rome Canning Company, also excepting and reserving its trade-marks or labels. In and by said agreements the defendant Jones transferred all the capital stock of the plaintiff company owned by him to Bert Olney, and Jones and the other three corporations transferred and surrendered to the plaintiff any and all right, title, or interest which they or either of them had in or to its plant or property. By the contracts entered into between the parties the trade-marks or labels which were owned by and which each of the companies parties to said agreement were entitled to use were designated and described with particularity; and in the agreement above referred to entered into between the McKinley, Ft. Stanwix, and Fredonia Companies it is provided "that the 'Sweet Kernel' and 'Pride of Rome' (with others) belong to the Ft. Stanwix Canning Company." In the agreement between the defendant Jones and Bert Olney, by which Olney agrees to procure a conveyance to Jones of the real estate and plant of the Rome Canning Company, is the following: "But not including any of the present brands and labels of the Rome Canning Co., which are to be reserved as the property of the Ft. Stanwix Canning Co." It is further provided in the same agreement as follows: "Each of the parties hereto agrees that he will well and truly keep and observe the terms and provisions of a concurrent agreement executed by the Fredonia, William McKinley, and Ft. Stanwix Canning Companies as regards the different labels belonging to each of the companies, and also as to the provision that each of said companies will not

interfere with the others in the use and enjoyment of said labels." It appears that the plaintiff invented or originated the trade-mark or label known as the "F. S. Flag" or "Sweet Kernel" in 1891, and that it had used the same substantially in its present form since that time. The trade-mark or label known as "Pride of Rome" was invented or originated by the Rome Canning Company about the year 1890, was used by that company until the early part of 1894, and until it went out of business, and was absorbed by the plaintiff company. Since that time it has been used continuously by the plaintiff. Upon the execution of the agreements above referred to, the defendant Jones became the president and manager of the William McKinley Canning Company; was the principal owner of its capital stock, and controlled and dictated its policy. Its business was carried on at Lenox, Madison county, N. Y., and its plant was located there. The labels "Our Flag" and "Pride of the Home" were used upon the goods put up by the William McKinley Canning Company at Lenox, N. Y., and on the label "Pride of the Home" was printed "Packed by the Rome Canning Co. at Rome, N. Y." although concededly none of the goods on which said labels were used prior to the commencement of this action were packed at Rome, N. Y. During the time Jones and the Olneys were jointly interested in the several corporations above named Jones was the principal salesman; was well acquainted with the different brands of goods put up by each of the companies, including the plaintiff; was acquainted with the use of the labels in question, and their value as aids in the sale of goods; had sold and billed plaintiff's goods with such labels upon them as the "Flag" goods, and knew the plaintiff's customers for such goods.

In view of the facts disclosed by the evidence in this case, we think it unnecessary to determine whether or not the words "F. S. Flag" and "Pride of Rome," and the devices and symbols used in connection therewith, and constituting the plaintiff's two labels, were adopted and used in such manner as to entitle it to be protected in their exclusive use; or whether such words, devices, and symbols are properly the subject of copyright, or strictly entitled to protection solely as trade-marks, for the reason that the defendants are estopped from urging those matters as a defense to plaintiff's claim, because by contract, for a good consideration, they agreed that the labels belong to the plaintiff; that it is entitled to their exclusive use, and that they will not use them,—will not infringe upon or interfere with their use by the plaintiff; and that, as between the parties to the contract, it need only be determined whether or not the terms of the contract have been violated. The inquiry is thus limited to ascertaining whether or not the labels adopted and used by the defendants are so similar to the labels owned and used by the plaintiff "as to deceive a purchaser of ordinary caution, or if they be calculated to deceive the careless or unwary, and thus injure the proprietors of the trade-mark." If so, then the plaintiff is entitled to the relief decreed by the judgment appealed from. Colman v. Crump, 70 N. Y. 573; Taendsticksfabriks Akticbolagat Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904.

The plaintiff's "F. S. Flag" label, so called, is about 10 inches long and 4 inches wide, or of such size as to entirely cover the outer surface, except the ends, of a can shaped like a cylinder. The background of the label is chiefly yellow. On the left end is a picture of a flag, showing a smooth surface, and occupying a space about 3 by 1½ inches. The stripes are bright red, the spaces between clear white. White stars on a light blue ground occupy the upper left-hand corner. It is attached to a gilt staff standing perpendicular. Directly over the flag, in large, raised gilt letters are the words, "F. S. Flag," and under it the words, in gilt letters, "Sweet Kernel Brand." In the center of the label, within a gilt rim about 1½ inches in diameter, surrounded by narrow white and blue bands, are the words, "Packed at Rome, Oneida Co., N. Y." On the right end, on a blue ground, is a picture of an ear of corn, peas, beans, or other vegetable contained in the can on which the label is used. Directly over the picture, and over a gilt scroll, in gilt letters with red edges, are the words, "Fort Stanwix Canning Co." Under this, in small black letters, are the words "Finest Quality," and under the picture is the name, in gilt letters, of the vegetable, with some word or words added denoting quality. The defendants' "Flag" label, so called, is the same size and shape as plaintiff's. The background is blue. At the left end is the picture of a flag of about the same size as the flag upon plaintiff's label, but it hangs in folds, is attached to a staff standing at an angle, at the end of which there are two cords with tassels. Above, and a little to the right of, the flag are the words in large, raised gilt letters, "Our Flag." Under those words are the words, in black letters, "Fancy Quality." Under the flag, in a gilt scroll, are the words, in white letters with black edges, "J. Lloyd Jones Canning Co.," and under the scroll, in red letters, "Lenox, Madison Co., N. Y." In the center of the label, in a gilt ring about 1½ inches in diameter, is an eagle's head. On the right end, in a gilt scroll, is a picture of the vegetable contained in the can upon which the label is used, substantially the same as on plaintiff's label. Over the picture are the words, in large, raised gilt letters, "Our Flag," and under the picture the name of the vegetable, in red letters, and some word or words added to denote quality. The plaintiff's label called "Pride of Rome" is the same size as the other, and has a white or light background. On the left end, in large, white, fancy letters with blue edges, upon a red ground, within a gilt scroll, are the words, "Olney Bros.," and below these, in blue letters, the words, "Packed at Rome, Oneida Co., N. Y." In the center of the label there is a picture of a Roman helmet, shield, and other devices in red and gilt; under it, in small black letters, the words, "Finest Quality." On the right end, above a gilt scroll, is a picture of the vegetable contained in the can upon which the label is used. Above the picture, in large red letters with gilt edges, are the words, "Pride of Rome." Under the picture is the name of the vegetable contained in the can, in black letters, and other words added to denote quality. The label used by the defendants called "Pride of the Home," and which it is claimed infringes the plaintiff's label last described, is exactly

the same size, and has the same colored background.  Upon the left end it has substantially the same picture of a vegetable as is upon the right end of plaintiff's label "Pride of Rome," but, as the labels are to be used upon circular cans, this distinction would not be observed.  Over the picture of the vegetable, in red letters with gilt edges, are the words, "Pride of the Home."  Under the picture is the name of the vegetable and other words to denote quality, in black letters, and under it, in red letters, the words, "Rome Canning Co."  In the center of the label is a picture of a Roman soldier in armor, and to the right of the figure, in small black letters, the words, "Fancy Quality."  At the right end of the label, within a gilt wreath printed upon a yellow ground, in red and black letters, are the words, "Packed by the Rome Canning Co. at Rome., Oneida Co., N. Y."  Under the wreath are a shield and other devices shown upon plaintiff's label.

If the above description conveys any idea of the appearance or chief characteristics of the four labels which it is intended to describe, it will be observed that there are many marked differences between the labels of the plaintiff and those used by the defendants which are claimed to be an infringement, and such as would readily enable a careful, or even casual, observer, if attention were called to the fact, to distinguish one set of labels from the other.  It is equally apparent, however, that in some of their features they are very similar, and that some of the distinguishing or more prominent characteristics are common to each set of labels, respectively.  Take the "F. S. Flag" and "Our Flag" labels.  They are naturally spoken of as the "Flag" labels.  "Flag" is the distinguishing word in the name.  The letters "F. S." in one case and "Our" in the other are merely incidental, and in common practice would not be used.  A person desiring to purchase goods marked with either label would be very likely only to remember the word "Flag," even if the fact of the existence of the other letters had not entirely escaped his attention.  It is true that upon the plaintiff's label are the additional words, "Sweet Kernel Brand," but the distinguishing word is "Flag."  So the prominent emblem, especially when used in connection with the name, is the flag.  That emphasizes the fact that the goods offered for sale are the "Flag" brand.  The picture of the flag used by the defendants differs in form and in many respects from the emblem used by the plaintiff; but, again, they are only differences in detail.  Its place upon the label is the same.  In size it is substantially the same.  The names above it occupy relatively the same position.  The fact that in one case the stripes of the flag are light red and in the other dark red, that the stars on one are white and on the other gilt, that the staff of one is perpendicular and of the other at an angle, are all matters of detail, and such as would not attract the attention of a customer, and would not be remembered if noticed.  The feature of each label which appeals to the eye is the flag.  The letters or the arrangement of the words upon the two "Flag" labels are not by any means identical, and marked differences may readily be discovered when attention is called to it, and still the similarity in those respects is close enough so that a person of ordinary caution—at least the "careless and un-

wary"—may be deceived. As matter of fact, the arrangement of the printed matter, the form and color of the letters used, are such as to give the two labels the same general appearance, independent of the name and independent of the flag, its most prominent device. In the two labels "Pride of Rome" and "Pride of the Home," so far as the name is concerned, "Pride" is the prominent word. The goods offered for sale are the "Pride" canned goods. The words added "of Rome" in one case and "of the Home" in the other are merely incidental. The goods would become known and would be dealt in as the "Pride" goods. If the words "of the Home," "of the Farm," "of the Garden," or "of the Fireside" may be added to the word "Pride" to designate canned goods manufactured or stated on the label to be manufactured at Rome, N. Y., the use of the word "Pride" is of no value to the plaintiff. The distinguishing emblem upon the plaintiff's "Pride" label is the picture of the Roman armor. In the defendants' "Pride" label the armor is placed upon a figure. It occupies the same place on each label. There is little similarity between the two, and alone would not be important, but, when the coloring in the two labels is observed, the arrangement of the printed matter noted, the form and coloring of the letters, the similarity in the sound of the name, the fact that upon the defendants' label it is stated that the goods are packed at Rome, N. Y., when in fact they are not, it is all suggestive of an attempt to appropriate the plaintiff's label, so far as possible, without incurring liability therefor.

We think the authorities fully sustain the conclusion reached by the learned trial court, and that the use of the names "Our Flag" and "Pride of the Home" by the defendants was, alone, such an infringement as will support the judgment. In the case of Hier v. Abrahams, 82 N. Y. 519, the plaintiff, who resided in and was engaged in the cigar business in the city of Syracuse, N. Y., called a certain brand of cigars manufactured by him "Pride," placed them upon the market, and established a large trade in them. The defendant, another cigar dealer in Syracuse, manufactured a different brand of cigars, called them "The Pride of Syracuse," and placed them upon the market for sale. The court held the name "The Pride of Syracuse" was an infringement upon the name "Pride," and a judgment restraining the defendant from using such name was sustained. In Newman v. Alvord, 51 N. Y. 189, the plaintiff manufactured cement, and sold it under the label "Newman's Akron Cement Co., Manufactured at Akron, N. Y." The defendant manufactured cement in Onondaga Co., N. Y., and attempted to sell it under the label "Alvord's Onondaga Akron Cement and Water Lime, Manufactured at Syracuse, N. Y." It was held that the plaintiff was entitled to be protected in the use of the word "Akron" as a trade-mark, and the judgment restraining the defendant from using that name was sustained. In Charles S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, "Walter Higgins Turkish Laundry Soap" was held to be an infringement upon "Charles Higgins German Laundry Soap." Congress & Empire Spring Co. v. High Rock Congress Spring Co., 45 N. Y. 291; Crawford v. Laus, 29 Misc. Rep. 248, 60 N. Y. Supp. 387; Tuerk Hydraulic Power Co. v. Tuerk, 92 Hun, 65, 36 N. Y. Supp. 384.

To determine whether or not a particular trade-mark infringes on another is often attended with difficulty, where the conclusion reached depends entirely upon the fact whether there is such a similarity between the two as will tend to mislead or deceive the public, and especially if such fact must be found simply from an inspection or observation of the two. No rule decisive of every case can be evolved from the authorities. The general rule is stated in Colman v. Crump, 70 N. Y. 573, supra, as follows:

"It is not necessary that the symbol or device complained of should be a fac simile of the genuine trade-mark, or so close an imitation as to be distinguished only by an expert, or upon critical examination by one familiar with the original. If the resemblance is such as to deceive a purchaser of ordinary caution, or if it be calculated to deceive the careless and unwary, and thus to injure the sale of the goods of the proprietors of the trade-mark, it is a violation of his property rights therein, and he may maintain an action to restrain such violation, and to recover damages therefor."

This rule has been approved in many of the adjudicated cases, and, so far as we have been able to discover, criticised in none. But the rule only states the question presented in each case, and in no manner decides it. Of course, in many cases the dissimilarity between the genuine and the alleged infringing trade-mark is so marked that it can be readily determined that no infringement exists, and in other cases the similarity is so great that the infringement is palpable; but in a case where the marks of similarity or dissimilarity are so evenly balanced that from mere inspection of the trade-mark a different conclusion might be reached by different persons as to whether or not the case falls within the rule above quoted, "whether the resemblance is such as to deceive a purchaser of ordinary caution, or if it be calculated to deceive the careless and unwary," it would seem clear that all the circumstances attending the adoption and use of the trade-mark should be considered,—the situation of the parties, the intent with which the alleged infringing trade-mark was adopted, the manner in which it was used, and the actual effect its use had, so far as can be ascertained,—to aid the court in reaching a proper conclusion. It was said in the Higgins Case, supra:

"Whether the court will interfere in a particular case must depend upon circumstances,—the identity or similarity of the names, the identity of the business of the respective corporations, how far the name is a true description of the kind and quality of the articles manufactured or the business carried on, the extent of the confusion which may be created or apprehended, and other circumstances which might justly influence the judgment of the judge granting or withholding the remedy. Whether, upon equitable principles, the remedy should have been awarded in this case upon the facts proved and found, is the question in this case."

In the case at bar the defendant company's plant is located in a county adjoining the county where the plaintiff is located. The defendant Jones is practically the owner of another plant in the same city where the plaintiff is doing business. The business of the plaintiff and defendant company is identical. The goods of each are in competition. The goods packed by the defendant company at its place of business at Lenox, N. Y., were labeled and sold

as having been packed in the city of Rome, where the plaintiff is located. There is evidence tending to show that the defendant Jones was advised, before his labels were printed, that they were so close a resemblance to the plaintiff's brands as to constitute an infringement; that certain dealers on that account would not trade with him if he adopted them; and that, notwithstanding, he adopted them, and for the purpose of securing by such means a part of plaintiff's trade; and one witness (James P. Olney) testified that he was deceived by defendants' labels, and was led to suppose by them that the defendants' goods were those of the plaintiff. It also appears that at least one purchaser designated the goods which he desired to purchase from the defendants as the "Flag" brand, and that they were billed to him as such. Considering the similarity in the two sets of labels, in connection with all the circumstances disclosed by the evidence, the conclusion is reached that the labels of the defendants were calculated to deceive the public, and were an infringement upon the plaintiff's labels.

We think the court did not commit error in refusing to dismiss plaintiff's complaint upon the defendants' motion, made upon the ground that the Fredonia Canning Company was not made a party defendant. No such question is raised by the pleadings, and it is nowhere suggested that the Fredonia Canning Company was guilty of wrongdoing. It could in no way be affected by or interested in the litigation. Its rights under the contracts in question were not involved. In fact, no question is raised as to the true meaning of any of the provisions of said contracts. It follows that the motion for a new trial should be denied, and the interlocutory judgment affirmed, with costs.

Motion for new trial denied, and interlocutory judgment affirmed, with costs. All concur, except LAUGHLIN, J., not voting.