### VERMONT MAPLE SYRUP CO., Inc., v. F. N. JOHNSON MAPLE SYRUP CO. et al.

### F. N. JOHNSON MAPLE SYRUP CO. v. VERMONT MAPLE SYRUP CO. Inc.

(District Court, D. Vermont. April 30, 1921.)

Nos. 58, 59.

1. **Trade-marks and trade-names ☜39—First use of trade-mark in particular territory under license from another gives no exclusive right.**
   The one first using a trade-mark in particular territory acquired no exclusive right to the mark, where it knew that another was using the trade-mark in other parts of the country, and used the trade-mark under a license from such other party.

2. **Trade-marks and trade-names ☜1—Not property, except in connection with business.**
   A trade-mark is not a right in gross, and is not the subject of property, except in connection with an existing business.

3. **Trade-marks and trade-names ☜26—Right grows out of use, and not adoption.**
   A trade-mark is a right appurtenant to the business in which it is used, and grows out of its use, and not out of its adoption.

4. **Trade-marks and trade-names ☜1—Nonexistent where there is no article to bear the mark.**
   A trade-mark cannot travel to markets where there is no article to wear the badge and no trader to supply the article.

5. **Trade-marks and trade-names ☜39—May be introduced in new territory through licensees.**
   One may introduce his trade-mark and create a demand for his variety of goods in new territory by licensees.

6. **Trade-marks and trade-names ☜34—Sale of interest in licensee held not to affect title.**
   Where the owner of a trade-mark assisted in organizing a company, which it licensed to use the trade-mark in certain territory, and all parties understood that it was a licensee at will and were not misled, the owner did not part with any right or title to the trade-mark, by estoppel or otherwise, by selling its interest in the company so organized, and was under no duty to speak of its right to the trade-mark at the time of the sale.

In Equity. Suits by the Vermont Maple Syrup Company, Incorporated, against the F. N. Johnson Maple Syrup Company and others, and by the F. N. Johnson Maple Syrup Company against the Vermont Maple Syrup Company, Incorporated. Heard on issues joined on bills and answers. Decree for the Johnson Company.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Shields & Conant, of St. Johnsburg, Vt., Allen Martin, of Essex Junction, Vt., and Warren R. Austin, of Burlington, Vt., for Vermont Maple Syrup Co., Inc.

Miller & Middleton, of Bellefontaine, Ohio, and V. A. Bullard, of Burlington, Vt., for F. N. Johnson Maple Syrup Co.

HOWE, District Judge. The F. N. Johnson Maple Syrup Company gave the Vermont Maple Syrup Company a license at will to use its trade-mark "Sugarbird" throughout New England, New York, New Jersey, and in the vicinity of Philadelphia, Pa. The Vermont Company having failed in negotiating for any other right to use the trade-mark, and having learned that the mark was not registered, took out registration in its own name under the laws of the United States, Vermont, New Hampshire, Maine, Massachusetts, Connecticut, Rhode Island, New York, and New Jersey, intending by such registration to deprive the Johnson Company of its mark and obtain a valid title thereto in that section of the country, but on application of the Johnson Company the United States registration was promptly revoked and granted to the Johnson Company.

[1] The Vermont Company now claims that, as it was the first one to use the trade-mark in that territory, it thereby acquired the exclusive right to the mark, notwithstanding it was using it as a licensee of the Johnson Company, and it seeks to enjoin that company from using the mark in that territory. To support this proposition it relies on Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713, and United Drug Co. v. Rectanus Co., 248 U. S. 90, 39 Sup. Ct. 48, 63 L. Ed. 141, but no such rule was adopted in either case. There different persons had in good faith adopted the same trade-mark, and each established and built up his trade in distant sections of the country from each other, without knowing of the other's mark or trade, and it was held that each should be protected in his territory, regardless of which person first used the mark; but in the case at bar, the Vermont Company knew that the trade-mark had been adopted and used by the Johnson Company in its business in Ohio and in other sections of the country for a long time before the Vermont Company commenced using the trade-mark under its license, and consequently the cases are not authority for the proposition advanced.

[2, 3] It is true that a trade-mark is not the subject of property, except in connection with an existing business. It is a right appurtenant to a business in which it is used, and grows out of its use, but not its adoption. It is not a right in gross, for its purpose is to designate the goods made by a particular person, and to protect the good will of that person's business against the sale of the same variety of goods made by others.

[4, 5] A trade-mark cannot travel to markets where there is no article to wear the badge and no trader to supply the article. Hanover Star Milling Co. v. Metcalf, supra, 240 U. S. 416, 36 Sup. Ct. 361, 60 L. Ed. 713, but this rule does not mean that the person who first uses the trade-mark of another as his licensee in new territory thereby becomes the absolute owner of it in that territory, for a person may in-

troduce his trade-mark and create a demand for his variety of goods in new territory by licensees. His mark thus travels to markets where there is an article to wear the badge and a trader to supply the article. Hanover Star Milling Co. v. Metcalf, supra, 240 U. S. 416, 36 Sup. Ct. 361, 60 L. Ed. 713.

[6] The Johnson Company planned the Vermont Company and invited its present owners to join in going into its line of business in territory where it had not up to that time extended its business. The Johnson Company owned one-half the capital stock and furnished one-half of the financial means required to carry on the business of the Vermont Company until April 7, 1920, when it sold its interest therein to the present owners, who were its original associates. While the parties were engaged in the business, the Johnson Company repeatedly informed the Vermont Company that, the more the mark was used, the more valuable it became, and for that reason it was anxious to have it used as much as possible. The Vermont Company was well aware that its license might be revoked, and that was the reason why it continually tried to obtain a better right to the trade-mark from the Johnson Company; but this request was continually refused, and the business was carried on under the license until it was revoked.

By selling its interest in the Vermont Company, the Johnson Company did not part with any right or title to its trade-mark. No advantage was taken by either party in that transaction. There was no duty imposed upon the Johnson Company to speak of its right to the trade-mark at the time it made the sale. All the parties understood that the Vermont Company was a licensee at will, and, no one having been misled in that transaction, no one is estopped by it. As soon as reasonably possible after the Johnson Company sold its interest in the Vermont Company, and revoked the license, it commenced selling "Sugarbird" syrup in the licensed territory. This was what the Vermont Company was fearful of, and what the Johnson Company had a legal right to do.

The Vermont Company having continued selling the same blend of syrup under the trade-mark "Sugarbird" after the license was revoked, it is not only liable for damages to the Johnson Company, but should be enjoined from further infringing the trade-mark.

Let an account be taken of the damages, and a decree entered accordingly.