Cecil R. MEDD, Mildred I. Medd, Richard L. Medd and Robert R. Medd, Ralph C. Medd and Ronald A. Medd, co-partners doing business as Dairy Queen Stores of Ohio, Plaintiffs,

v.

BOYD WAGNER, Incorporated, an Ohio corporation, Earl E. Turk, Verl B. Stevenson, Elmer H. Culver, Frieda Hough Culver, F. G. Koehl and Charles Barton, Defendants.

Civ. No. 7214.

United States District Court
N. D. Ohio, W. D.
June 10, 1955.

Fuller, Harrington, Seney & Henry, Toledo, Ohio, Johnston, Thompson, Raymond & Mayer, Chicago, Ill., for plaintiffs.

Freeman Crampton, Toledo, Ohio, Chester Pendleton, Thos. A. Orndorff, Findlay, Ohio, Milton C. Boesel, Toledo, Ohio, Martin L. Hanna, Bowling Green, Ohio, Andrew J. Conroy, Judson J. Allgood, Peck, Shaffer & Williams, Cincinnati, Ohio, for defendants.

KLOEB, District Judge.

This is an action to restrain the unauthorized use of the trade name "Dairy Queen" and of the trade phrase "The Cone with the Curl on Top".

Plaintiffs seek to prevent defendants, in the absence of consent of plaintiffs, from using the trade name "Dairy Queen" and the trade phrase "The Cone with the Curl on Top" in the vending of soft frozen ice milk, and from representing to the public that they are part of the "Dairy Queen" organization in Ohio and elsewhere vending "Dairy Queen" ice milk. The theory of the complaint is that the plaintiffs were exclusive owners in the State of Ohio of the trade name and the trade phrase, and that use of this name and phrase by the defendants is common law unfair competition, and that the defendants were and are using the property of the plaintiffs without permission therefor.

The original complaint, filed on June 9, 1954, was against Boyd Wagner, Incorporated, an Ohio corporation, and certain named individuals who were store operators in one or more of the twenty-

one counties in Ohio that had been sub-licensed to Boyd Wagner, Incorporated, by plaintiffs. Plaintiffs are citizens and residents of the State of Illinois.

The complaint recites in effect that, since on or about January 1, 1947, plaintiffs have used the name "Dairy Queen" as applied to frozen milk products in the State of Ohio, and that since that date they have engaged in the business of licensing the use of the name "Dairy Queen" in Ohio and supervising, inspecting and supplying various other services to licensed retail outlets using that name; that, prior to September 7, 1946, and up to May 18, 1954, Ar-Tik Systems, Incorporated, was the owner of United States Patent No. 2080971 on a machine designed to produce a frozen product from milk known as "ice milk" and that, on September 7, 1946, Ar-Tik Systems licensed H. A. McCullough, of Illinois, to use and to permit others to use, manufacture and sell the machines built under the patent until the expiration of the patent on May 18, 1954, in certain States of the United States, including the State of Ohio; that, on December 30, 1946, McCullough licensed to plaintiffs the exclusive right to the use of the patent in the State of Ohio for the life of the patent.

The complaint further states that McCullough originated the name "Dairy Queen" in 1940, and from that date to December 30, 1946, used the name in connection with the sale by him, or by others licensed by him, of the ice milk product made by machines built under the patent, in the continental United States; that, on November 7, 1946, McCullough filed in the office of the Secretary of State of the State of Ohio a proof of publication of the name "Dairy Queen" and that, on December 30, 1946, McCullough assigned his right, title and interest in the trade name in the State of Ohio to plaintiffs; that, from and after December 30, 1946, plaintiffs have continuously used the name "Dairy Queen" in connection with the sale to the public of ice milk made in machines manufactured under the patent, and that plaintiffs entered into a series of franchise agreements with certain "district franchise operators" in the State of Ohio, under which said franchise operators were licensed to use the machines built under the patent during the life of the patent, that is to say, up to May 18, 1954, and were granted and licensed the right to use the name "Dairy Queen" during the period covered by the agreement. These district franchise agreements, including the one to defendant Boyd Wagner, Incorporated, all expired by their own terms on the date the patent expired, to wit, May 18, 1954; that said franchise agreements provided that the district franchise operators could by subcontract assign or transfer their interests under the contract to third persons.

The complaint further states that the district franchise operators entered into sub-franchise agreements with "store franchise operators", among whom are the individual defendants, and that, by the terms of these agreements, the store operators were licensed to use the machines built under the patent and to use the trade name in connection with the sale of ice milk made in the freezers built under the patent; that the store franchise operators, pursuant to their agreements, used the freezer machines built under the patent purchased by them at manufacturer's cost from a manufacturer licensed by McCullough, to make an ice milk product for sale to the public in the State of Ohio, and have sold this product under the name "Dairy Queen" in stores of uniform design on which the name "Dairy Queen" is prominently displayed; that each store operator has paid to the district franchise operator a royalty of a certain amount per gallon of ice milk sold for the use of the patent and the use of the name, and that each district franchise operator has in turn paid to plaintiffs a corresponding royalty.

The complaint alleges that, in the year 1948, plaintiffs originated and authorized the district franchise operators, and through them the store operators, to use

the phrase "The Cone with the Curl on Top" to describe the ice milk cone made with the ice milk known as "Dairy Queen" and sold in "Dairy Queen" stores, and that said district and store operators have so used that phrase since that time; that, on or about August 17, 1949, plaintiffs assigned to "Dairy Queen National Trade Association, Inc." all their right, title and interest in the phrase "The Cone with the Curl on Top", except that they reserved to themselves the exclusive right to use that phrase in the State of Ohio, and that the Association, on August 17, 1949, registered that phrase as a print or label with the United States Copyright Office; that plaintiffs prepared plans and specifications of a distinctive prototype building on which the name "Dairy Queen" is prominently displayed to be used by all store operators, and that they supplied blueprint copies to each district franchise operator in the State of Ohio to be delivered by him to each store operator in his territory to be used by them in the construction of the store buildings in which the ice milk product known as "Dairy Queen" is sold; that the district franchise operators delivered these copies of plans and specifications to the store franchise operators, and that they were used by the latter in the construction of their store buildings; that plaintiffs and their predecessors have spent large sums of money advertising and promoting from and after December 30, 1946, the name "Dairy Queen", and from and after the year 1949 the phrase "The Cone with the Curl on Top" in the State of Ohio, and that they have spent large sums and have devoted substantial amounts of their time to the inspection of all "Dairy Queen" stores operating in the State of Ohio in order to insure uniformity and quality of the product sold, and to insure that the stores are kept clean and attractive; that they have spent substantial amounts of time and money in the development and improvement and inspection of machines used in the sale of ice milk at retail, and in the develop-

ment of the mix used by the store operators, and in the development of uniform designs and markings for containers in which the product is sold to the public, and in the training and education of store franchise operators and their employees in the proper operation of the local stores; that, by reason of plaintiffs' efforts and expenditures of money, the name "Dairy Queen" has become associated in the minds of the consuming public with the uniform product of consistent high quality sold only at clean and attractive stores of uniform designs operated by persons following identical sales and operating methods, and that the consuming public in Ohio now regards all articles sold under the name "Dairy Queen" as the products of one organization; that, on July 20, 1948, plaintiffs entered into a district franchise agreement with defendant Boyd Wagner, Incorporated, whereby the latter was given exclusive right to the use of the patent and the name in twenty-one counties in the State of Ohio, and that said rights were intended by all the parties to and did expire on the date of the expiration of the agreement, which was May 18, 1954, the date when the patent expired; that Boyd Wagner, Incorporated, subsequently entered into a number of sub-franchise agreements by which it licensed various store operators to the right to use the patent and the trade name, and that the named defendants herein were so licensed; that all of the licensed store operators have, since entering into said agreements with Boyd Wagner, Incorporated, used freezers manufactured under the patent to make ice milk which they have sold to the public under the name "Dairy Queen"; that all of these store operators have paid royalties to Boyd Wagner, Incorporated, for the use of the patent and the name, and that Boyd Wagner, Incorporated, in turn has paid plaintiffs royalties for the use of the patent and the name; that the licensed rights to defendants expired on May 18, 1954, but that the defendants, disregarding the rights of plaintiffs, announced that, after May 18, 1954, they would continue to use

the name "Dairy Queen" and the phrase "The Cone with the Curl on Top" and would refuse to pay plaintiffs any royalties therefor.

Wherefore, plaintiffs pray for a preliminary and permanent injunction restraining defendants from the unauthorized use of the trade name and the trade phrase.

On June 25, 1954, defendant Boyd Wagner, Incorporated, filed its answer and, on June 28 following, the Court issued an Order of Injunction Pendente Lite, whereby the defendants were ordered and directed to pay into the registry of the Court, during the pendency of the action, the royalties required under the terms of the contracts.

On July 30, plaintiffs filed an amendment and supplement to the complaint, in which they joined additional store operators who were operating under subfranchise agreements from Boyd Wagner, Incorporated, as party defendants, and the injunction was extended to apply to these additional defendants.

On September 9, the five original individual defendants each filed separate answers and thereafter, through their counsel, stated to the Court that they had no right to the continued use of the trade name and the trade phrase without permission from plaintiffs or the designated rightful owner, and that they would continue to operate and pay their stipulated royalties into the registry of the Court, and would abide by the eventual decision of the Court.

On October 4, the individual defendants named in the amended and supplemental complaint, who are operators of sixteen stores, filed their answers, in which they set up nine separate defenses to the complaint.

On December 2, Boyd Wagner, Incorporated, filed its offer to confess judgment, in which it recites that its subfranchise agreement, as well as all sub-agreements entered into by it with the individual store operators who are defendants herein, are assigned to plaintiffs. On the same date the offer was accepted by plaintiffs.

For a complete understanding of the facts of the case, it is necessary to study Plaintiffs' Exhibit No. 1, which is the Dairy Queen freezer franchise agreement between McCullough and plaintiffs, Plaintiffs' Exhibit No. 2, which is the Dairy franchise agreement entered into between plaintiffs and Boyd Wagner, Incorporated, and Plaintiffs' Exhibit No. 5, which is typical of the sub-franchise agreements entered into between Boyd Wagner, Incorporated, and the individual store operator defendants who filed their answer on October 4, 1954.

In each store operator agreement entered into by defendants with Boyd Wagner, Incorporated, wherein each defendant was licensed to use the patented freezer machine and the trade name "Dairy Queen" upon the payment of a stipulated royalty, the store operator agreed that Boyd Wagner, Incorporated, owns the exclusive right to the use of the trade name "Dairy Queen" in the area covered by the agreement; that the store operator desires to purchase the exclusive right of the trade name, and that Boyd Wagner, Incorporated, agrees to sell and transfer to the store operator the exclusive right to use the name "Dairy Queen" subject to certain specified conditions. The operator further agreed as follows:

"Both Parties agree that said trade name 'Dairy Queen' has substantial value, that it is being used in many localities throughout the country, and that the restrictions, limitations, and conditions herein imposed are necessary, equitable, and reasonable for the general benefit of the parties to this contract and all other parties enjoying any lawful interest in said trade name."

The store operators further agreed that they would be prohibited from using the name "Dairy Queen" outside the specified area, and they agreed to various restrictions placed upon their operations

which are enumerated in the written agreement.

The operator further agreed as follows:

"In the event that Second Party shall fail to perform or violate any of his obligations hereunder, the First Party" (Boyd Wagner, Incorporated) "may immediately terminate this contract by notice in writing delivered to the Second Party and upon such termination all rights of Second Party to use the trade name 'Dairy Queen' in any manner whatsoever shall cease forthwith."

The great difficulty in the determination of this case has been the extreme fluidity of the defense. As we have heretofore stated, the answer of defendants sets up nine separate defenses. Of these defenses, we believe that those contained in paragraphs 21 and 27 contain the ones on which the defendants rely.

Paragraph 21 reads as follows:

"Defendants deny that Plaintiffs or their district operators jointly or severally owned the name 'Dairy Queen', and therefore deny the right of said persons to vest the exclusive right to use said name in these Defendants or any other person, and they further allege that the name 'Dairy Queen' and the phrase 'The cone with the curl on top' is so closely associated in the minds of the public with the machines described in Plaintiffs' complaint, and the patent on said machines having expired, the name and good will arising from said product, operation of said machines, or the industry in general, is now within the public domain."

Paragraph 27 reads as follows:

"As and for a third separate, complete and affirmative defense to the complaint, Defendants say that the name 'Dairy Queen' and the phrase 'The cone with the curl on top', the prototype building, are now generic in nature, design, meaning and usage

and are so considered and used by the public, and the Plaintiffs having at all times claimed that the Dairy Queen product was linked, coupled and associated with the patent, and the patent now having expired and the public knowing all iced milk products as 'Dairy Queen', the entire good will of said industry has entered the public domain."

It thus appears from these claimed defenses that defendants, first, deny ownership of the trade name in plaintiffs, and, second, maintain that, with the expiration of the patent on May 18, 1954, plaintiffs lost the right to the exclusive use of the trade name and the name entered the public domain.

At a preliminary hearing four days before the opening of the trial, counsel for defendants, upon being pressed to designate the defenses on which they relied, stated that they were relying on one defense, to wit, "that the name was so coupled with the patented machine that the right to the exclusive use of the name expired with the patent".

In their opening statement at the trial, counsel for defendants were hesitant to state the exact defense upon which they placed reliance. At the opening of the defense, counsel for defendants made the following statement (R. 371):

"After listening to plaintiffs' case, we are certain we do know our position, and it is this: that the contracts have ended and we are not bound by them, at least since the date of May 18, 1954, by reason of the expiration of the patent and the failure of the plaintiffs to comply with the contracts, and the failure of the district operators to comply with the contracts, and for the further reason that under the franchises the sellers do not have the right to confer upon the store owners the rights which are intended to be conferred by a licensing agreement. It is our position that the cornerstone of the contract was the

patent, and that having expired, the contracts fall."

After the above statement by counsel for the defendants, we concluded, and proceeded accordingly, that both sides agreed that the contracts of the defendants expired as of May 18, 1954 (R. 17, 371).

Counsel for the defendants further said (R. 374):

" * * * We cited the Shredded Wheat case [Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73], bearing on the point that with the fall of the patent the right to collect royalties also falls, and that you can't have a business that trades and deals only in licenses unless there is coupled with it a productive industry and the creation of a product."

On Page 12 of defendants' brief, they review their defenses as follows:

"A. The agreement between the McCulloughs and the Medds is a nullity, because the McCulloughs had no interest in the trade-mark or trade-name use of the name 'Dairy Queen' in the State of Ohio capable of being transferred.

"B. The Medds' course of conduct whereby its patent sublicensees, operating independently of each other, made trade-mark and trade-name use of the name 'Dairy Queen' in local areas in the State of Ohio, without control thereof, has destroyed the capacity of the name to function as a statewide trade-mark or trade-name.

"C. The Medds have failed to show a protectible interest in the trade-mark or trade-name use of the name 'Dairy Queen' in the State of Ohio.

"D. The patent proprietors, including the Medds, have so coupled the name 'Dairy Queen' with the now expired patent on the 'Dairy Queen' machine as to prevent them from stopping users of the machine from continuing to call their product and their places of business by the name 'Dairy Queen'.

"E. 'Property' in the name 'Dairy Queen' resides in the individual store operators in their respective areas of operation."

From all of the foregoing, we take it, therefore, that defendants, first, deny ownership of the trade name in plaintiffs and, second, contend that, with the expiration of the patent, plaintiffs lost all right to the exclusive use of the trade name "Dairy Queen".

The foregoing contentions designated A, B, C, D and E, which are set forth in defendants' brief, when grouped together, seem to contest the right of plaintiffs in the name and conclude that somehow, after the expiration of the patent, property in the name became lodged in the defendants.

We believe that defendants are estopped from raising these questions of ownership by virtue of the contracts which they entered into with Boyd Wagner, Incorporated, and that the estoppel did not end with the termination of the contract. In the case of E. F. Prichard Co. v. Consumers Brewing Co., 6 Cir., 136 F.2d 512, at page 522, certiorari denied 321 U.S. 763, 64 S.Ct. 486, 88 L.Ed. 1060, we find the following:

"Any claims that might be asserted against the right of Prichard to ownership of the label—under the trade-mark law—are rendered of no avail in view of that fact that appellee is estopped to advance such contentions, because of the contract in which it was agreed that the ownership of the mark was to be in Prichard. As between parties claiming the right to a trade-mark, it is unnecessary to determine whether the mark was adopted and used in such a manner as to entitle one of the parties to be protected in its exclusive use, where the parties entered into a contract in which they agreed that the trade-mark would belong to one of them, who would

have the right to its exclusive use. In such a case, the party who has agreed that the other shall be the owner of the trade-mark, is estopped from raising questions with regard to adoption and use; and the inquiry is limited to determining whether the terms of the contract have been violated. Ft. Stanwix Canning Co. v. William McKinley Canning Co. et al., 49 App.Div. 566, 63 N.Y.S. 704. See, also, Lawrence-Williams Co. v. Societe Enfants Gombault et Cie, 6 Cir., 22 F.2d 512, 514; Waukesha Hygeia Mineral Springs Co. v. Hygeia Sparkling Distilled Water Co., 7 Cir., 63 F. 438."

Incidentally, the above case is also authority for the principle that one may introduce his trade mark and create a demand for his variety of goods in a new territory by licenses. On page 519, of 136 F.2d, we find the following:

"It is true, as contended by appellee, that a naked license to use a trade-mark is of no more validity than a naked assignment thereof. Lea v. New Home Sewing Machine Co., C.C.N.Y., 139 F. 732. But a trade name, like a trade-mark, may be assigned, licensed, or lent, as long as it remains associated with the same product or business with which it has become associated in the public mind. An owner of a trade name who lends the use of such a trade name, may resume its exclusive use according to the terms of the lending. Cardinal v. Taylor, 302 Mass. 220, 19 N.E.2d 58. A manufacturer of a certain commodity, by agreeing to allow the purchaser thereof the use of its trade name for a certain period, did not lose the exclusive right to the name after the expiration of the term; J. F. Rowley Co. et al. v. Rowley, 3 Cir., 18 F.2d 700; and one may introduce his trademark and create a demand for his variety of goods in a new territory, by licenses. Vermont Maple Syrup Co., Inc., v. F. N. Johnson Maple

Syrup Co. et al., D.C.Vt., 272 F. 478."

In the case of Smith v. Dental Products Co., Inc., 7 Cir., 140 F.2d 140, certiorari denied 322 U.S. 743, 64 S.Ct. 1146, 88 L.Ed. 1576, paragraph 8 of the syllabus reads as follows:

"Where owner of trade-marks granted defendant right to use trade-marks on royalty basis and defendant used trade-marks for many years without contesting plaintiff's title or ownership, defendant was estopped by the agreement and its conduct from claiming title or ownership in the trade-marks."

On page 148, of 140 F.2d, we find the following:

"Moreover, we are of the view that defendant is estopped by the terms of the agreement and its acts and conduct to claim title or ownership in such marks. 'Its recognition by defendant and the subsequent sale of cars bearing it operated as an estoppel of a denial of a property right therein.' Ritz Cycle Car Co. v. Driggs-Seabury Ordnance Corp., D.C., 237 F. 125, 128. At no time from 1918 to 1935 did defendant make any claim to or contest plaintiff's title or ownership in these trade-marks. During all this time it paid royalties for their use. It is true that defendant obtained two registrations on the trade-mark Conducto, but when its impropriety in so doing was called to its attention by plaintiff, it promptly executed a formal assignment of such trademark to him. We are unable to perceive how this action on the part of defendant can be reconciled with its present claim of ownership. It amounts, so we think, to a plain recognition of plaintiff's ownership, and this more than ten years after the execution of the first license agreement."

On this question of ownership, defendants take the position that estoppel, if any, ended with the contract. However,

the authorities that they cite in support of this contention are not convincing. Walker on Patents, Sec. 385 (Deller's Edition) (Br., p. 46), and the case of Stimpson Computing Scale Co. v. W. F. Stimpson Co., 6 Cir., 104 F. 893, announce the rule that, after a patent licensee's contract has expired, he is free to attack the validity of his licensor's patent. We do not find the same considerations involved where a trade name is the subject of the license. Defendants cite Amiesite Asphalt Co. of America v. Interstate Amiesite Co., D.C.Del.1933, 4 F.Supp. 504, affirmed, 3 Cir., 72 F.2d 946. We do not find this case convincing on the point sought to be made. It is authority for the principle that a trade mark licensee may, after his license contract has expired, attack his licensor's title on facts which arose after the license contract expired. He may then, and under those conditions, claim that the name has become generic and is dedicated to the public.

■ Even though the doctrine of estoppel were not applicable here, we are convinced from the evidence that plaintiffs are the rightful owners of the name, which they acquired from the McCulloughs, and of the phrase, which they originated, and which they in turn, after acquisition and exploitation, licensed to Boyd Wagner, Incorporated, who in turn licensed to defendants.

McCullough opened the first "Dairy Queen" store in the year 1939 and thereafter, until the close of the year 1946, he opened and operated some twenty-one stores dispensing ice milk and operating under the trade name "Dairy Queen". These stores were located in the States of Iowa and Illinois. Therefore, at the time that he acquired the patent license from Ar-Tik in 1946, he had already established a trade name at least in the States of Iowa and Illinois. He had a right, by license, to introduce his trade name and create a demand for his variety of goods in a new territory by licenses. E. F. Prichard Co. v. Consumers Brewing Co., supra. The fact that he li-censed the use of the name in connection with a license of the patent right renders his position much stronger. He was not entering into a mere naked license agreement. See E. I. Du Pont De Nemours & Co. v. Celanese Corporation of America, 167 F.2d 484, 35 C.C.P.A., Patents, 1061, 3 A.L.R.2d 1213.

The case of Vermont Maple Syrup Co., Inc., v. F. N. Johnson Maple Syrup Co., 272 F. 478, cited in the Prichard case, 136 F.2d at page 519, is authority for the principle that one may introduce his trade mark and create a demand for his variety of goods in new territory by licenses.

When McCullough licensed plaintiffs to the use of the patent and the trade name in the State of Ohio in December of 1946, he had established the trade name "Dairy Queen" as being distinctive of a style and mode of operation in the sale of an ice milk product. Plaintiffs, by virtue of their license agreement, set out immediately to extend their business, to exploit the patent and the trade name in the State of Ohio by way of sub-licenses to district operators. Some twenty-two such sub-licenses were issued to district operators in the State of Ohio before the district operator's license was extended to Boyd Wagner, Incorporated, and during this time plaintiffs themselves operated some four or five stores in the State of Iowa. In less than eight years, from January of 1947 to May 18, 1954, plaintiffs and their licensors, McCulloughs, extended the business, not only throughout the States of Ohio, Illinois and Iowa, but into most of the States of the Union, until the "Dairy Queen" enterprise numbered last year some 2,600 retail stores scattered throughout the country, 200 of which were in the State of Ohio.

During this time, plaintiffs expended the sum of $46,779.85 for traveling and overhead in the operation of their business in Ohio (R. 349–350), and Boyd Wagner, Incorporated, expended the sum of $16,140.96 (R. 303) in connection with policing and conducting the "Dairy

Queen" business in the twenty-one counties covered by its contract.

During this period of time, plaintiffs furnished to the store operators, including defendants, plans of the prototype building and numerous incentives and instructions and directions relative to the conduct of a typical "Dairy Queen" store, made researches for the improvement of the machines and the mix to be used in the machines, and conducted numerous methods of advertisement. Plaintiffs also, through the National Dairy Queen Association, conducted national advertising by way of radio, television, national magazines and other media to bring before the public throughout the country the value of the name "Dairy Queen" and of the phrase "The Cone with the Curl on Top" so as to make the public conscious of the existence of a preferred organization dealing through individual store owners, in which uniform quality, quantity, cleanliness, style and mode of operation could be expected.

We believe, from all of this, that plaintiffs were offering more than a naked license to these store operators. Through their district operator, they were offering an established name that had property value of great worth from which they should not be divested without their consent.

We are not here confronted with a situation such as obtained in Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713, and in United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, where two parties independently employed the same trade mark or name not in general use, but in separate and remote markets, and where the later adopter in good faith, and without notice of the use of the trade name in other territory, spent money and effort in building up a trade in his territory under the name. We are here confronted with a situation where the defendants knowingly entered into a license agreement to use the trade name and the trade phrase and paid compensation therefor over a period of years. We believe that they are precluded from taking possession of the trade name and the trade phrase without compensation therefor and without the consent of the rightful owners.

■ We turn now to the second named defense, to wit, that, with the expiration of the patent on the freezer machine, plaintiffs' rights to the exclusive use of the trade name "Dairy Queen" and the trade phrase "The Cone with the Curl on Top" ceased to exist.

In passing, we mention that the trade phrase "The Cone with the Curl on Top" was originated by Mr. C. R. Medd in 1947, shortly after he received his license from McCullough, and, in 1948, plaintiffs had an engraving made of an advertisement which used that phrase in conjunction with the name "Dairy Queen" (Plaintiffs' Exhibits 34, 35 and 36, Record 109–110). From the engraving, plaintiffs prepared 100 ad mats which were made available to their district and store operators in Ohio. (R. 110–111.) Plaintiffs subsequently turned the trade phrase over to the National Dairy Queen Trade Association, reserving the right to use it in Ohio. (R. 111.) The Association then proceeded to copyright the phrase, the copyright certificate showing C. R. Medd as the author of the phrase. (Plaintiffs' Exhibit 38, Record 111–112.) The phrase has since been used by the Association on advertising throughout the United States.

Defendants, in advancing the second defense, place reliance chiefly on Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Scott Paper Co. v. Marcalus Manufacturing Co., Inc., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47; and Checker Cab Mfg. Corporation v. Green Cab Co, 6 Cir., 35 F.2d 631. In the Singer case, it is quite evident that, during the life of the patent, the name "Singer" became the identifying and generic name of the machine, and the Court, therefore, concluded that the name passed to the public

with the cessation of the monopoly which the patent created. In other words, on the expiration of the patent the right to make the patented article and to use the generic name passed to the public with the dedication resulting from the expiration of the patent.

In the Kellogg case, the Court concluded that the term "shredded wheat" was generic, and that no exclusive right to its use could be acquired. In other words, a patent monopoly could not be extended through the use of a name or a term that was generic to the patented article.

In the Scott Paper case, the Court concluded that the patent laws do not contemplate that anyone by contract or any form of private arrangement may withhold from the public the use of the invention of an expired patent, the public right to the enjoyment of which has been secured by the grant of a monopoly in the patented invention for a limited time.

In the Checker Cab case, the conclusion of the Court was that a retention of rights in the operation and continued control of a trade mark could be preserved, if at all, only by express provision in the original contract, and the Court found that, in that case, the parties had omitted such a provision.

The above cases are not convincing and are not determinative of the issue raised here by the defendants. We are convinced, from the evidence, that the trade name "Dairy Queen" and the trade phrase "The Cone with the Curl on Top" are not associated in the public mind with the patented freezer machine, and that no attempt was made to so associate them; and there is not here an attempt to extend the life of the patent by use of the trade name and the trade phrase.

The freezers that were used, and on which the patent expired on May 18, 1954, were known as "Duke freezers" or "Stoelting freezers", dependent upon the origin of manufacture, and since the pat-

ent expired the use of these machines has been thrown open to the public, any one can buy one and use one without the restraint of the patent monopoly. On the other hand, the trade name "Dairy Queen" connotes an ice milk product and the organization which dispenses that product; it connotes a style and method of doing business, a uniform plan of retailing the ice milk product in prototype buildings that are distinctive from other stores dealing in similar products, and the name, therefore, is not generic to the machine. If, as we conclude from the evidence, the trade name is not the generic name in the public mind for the patented machine, then the right to the exclusive use of the trade name continues in the patentee despite expiration of the patent. Telechron, Inc. v. Telicon Corp., 3 Cir., 198 F.2d 903; Ironite Co. v. Cement Waterproofing & Ironite Co., D.C., 20 F.Supp. 603; Prest-O-Lite v. Davis, 6 Cir., 215 F. 349.

We see no merit to the contention of the defendants that the right to the use of the name ceased with the expiration of the patent monopoly on the machine.

The Injunction Pendente Lite heretofore ordered by the Court may be made permanent as prayed for, enjoining the defendants from the use of the name "Dairy Queen" and the phrase "The Cone with the Curl on Top" in the State of Ohio.

If an accounting of all gains and profits made by defendants by reason of the acts complained of and damages that may have been suffered by plaintiffs are claimed, then that matter may be pursued in due time.

Plaintiffs may, within ten days, prepare findings of fact and conclusions of law drawn in accordance with this opinion, and defendants may, within ten days after plaintiffs have lodged their findings and conclusions with the Court, file their exceptions and suggested additions thereto.