## CENTURY DISTILLING CO. v. PH. SCHNEIDER BREWING CO.

### No. 11189.

District Court, D. Colorado.
Dec. 9, 1938.

Rogers, Woodson & Rogers, of Chicago, Ill., and William V. Hodges, Henry C. Vidal, and Joseph G. Hodges, all of Denver, Colo., for plaintiff.

Dines, Dines & Holme and Robert E. More, all of Denver, Colo., and Albert J. Fihe, of Chicago, Ill., for defendant.

SYMES, District Judge.

This suit arises under the trade-mark laws of the United States. The agreed facts determined at a pre-trial hearing (Rule 16, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c,) disclose that since January, 1934 the plaintiff has been engaged in the business of distilling and selling alcohol and alcoholic liquors, particularly gin and whiskey. Its plant is located at Peoria, Illinois. It has sold over $3,000,000 worth of its product and established a nationwide business for its brands and trademarks, known as "Century" and "Century Club." These names are attached to its product by means of appropriate labels. In addition its advertising—nationally distributed—has cost in the neighborhood of $150,000 per year.

One Philip Freiler of Elgin, Illinois, first used the name "Century Club" as a name of whiskey in May, 1883, and established it as a well-known brand with a wide distribution in the Middle West. When the City of Elgin went dry under a local option law in 1914 he sold his entire business to Henry A. Klein, doing business as the Liquor Dealers Supply Company. Before that time, however, and on April 20, 1905, Freiler had registered the trademark "Century Club" for whiskey and reg-

istration was issued to him by the Patent Office March 19, 1907.

Klein paid an ample consideration and continued the business under the Freiler name and manufactured and distributed gin and whiskey as "Century" until prohibition. After repeal of the 18th Amendment he resumed business in the same manner until July 25, 1934, when the plaintiff, by a formal assignment, acquired from him all rights to the trade-mark "Century" and "Century Club" for whiskey, gin and other liquors and has continued to use the same ever since.

The defendant brewing company has manufactured and sold beer in Trinidad, Colorado, for many years and in 1908 adopted and used the word "Century" as a trade-mark for its product continuously until 1916, when Colorado voted dry, then used the name on non-alcoholic beverages and resumed its use on beer when the manufacture of beer became legal in 1933. It has built up a large business and its sales extend to the adjoining states of New Mexico, Oklahoma, Utah, Wyoming, Texas, Kansas, Missouri, Nebraska and Arizona. It has spent large sums in advertising.

Plaintiff asks that it be adjudged the owner of the trade-marks and the defendant be restrained from using the name "Century" and for other relief.

The answer questions plaintiff's title to the name "Century" and denies the plaintiff derived any rights from the Liquor Dealers Supply Company, or that the latter acquired any rights to the name "Century" from Freiler. In a counterclaim defendant says it has used the name "Century" on its beer continuously since 1908, with the exception of the prohibition period, and has built up a valuable business. That plaintiff's sales of whiskey and gin under the same name in its territory has deceived the public as to the origin of plaintiff's goods to the defendant's damage and asks for a decree giving it the exclusive use of the name "Century" and "Century Club", as applied to all alcoholic beverages, and an accounting.

■ First. We think the evidence establishes satisfactorily the plaintiff's chain of title to the trade name "Century" and "Century Club," as first established and used by Freiler. This because Klein took over, bag and baggage, everything Freiler had when forced out of business, including the common law trade-mark or name "Century" and "Century Club." The plaintiff's testimony on this point stands unopposed and sustains the burden of proof. The transfer of Klein's business (the Liquor Dealers Supply Company) to the plaintiff is evidenced by the formal assignment of July 25, 1934, and the intent of the parties is further supported by the letter of November 22, 1933. The proceedings and decision of the Patent Office in our opinion are not material on this question.

■ Second. On the question of confusion raised in the defendant's counterclaim, neither the evidence nor facts of which we take judicial notice support defendant's contention. Both plaintiff and defendant have manufactured and sold their products under the same name successfully for many years without hurt by one to the other. There is no evidence that the plaintiff intentionally displayed or sold its goods to the public as defendant's; or by labels, shape of package or advertising made false representations designed to confuse the public. In business circles manufacturers and distributors of gin and whiskey are not classed as brewers, nor are they thought of as competitors. But granting they are competitors, all that the authorities require is that each label and display its product in such a manner as to avoid deceiving any reasonably careful person. Defendant in order to obtain relief must prove that the plaintiff's goods are sold or palmed off as those of the defendant, or are so similar that the prudent buyer will be deceived.

The containers and labels of plaintiff and defendant are before us. We fail to see how a prudent purchaser could be confused. The bottles are dissimilar in shape and appearance. True the word "Century" is on both labels, but in entirely different style, type of letter, size and color. On one of the plaintiff's labels, for instance, the words "Straight Rye Whiskey" and "Distilled and Bottled by Century Distilling Co., Peoria, Ill." are very prominently displayed. The words "Beer" and "Ph. Schneider Brewing Co., Trinidad, Colo." are on the defendant's label in large type.

■ The habitual purchaser of whiskey seldom buys beer and the converse is true. This creates a resistance in the purchaser against the likelihood of confusion or deception. That beer and gin are fundamentally different and rarely if ever manu-

factured by the same concern is too well-known to require proof. It is the careful purchaser that the law is concerned about and not the negligent or indifferent. That means one who buys, after at least, a cursory inspection.

The witness Carter, the defendant's manager, testified he had no contacts with the trade and could not state there was any confusion of orders. The attention of Mr. Jacobson was attracted to "Century Whiskey", not as the result of confusion, but because he recalled "Century" was used by his friend Mr. Salit, head of the defendant corporation. The testimony of the other witnesses on this point—especially that of Mr. Allen—was not convincing.

There is no disagreement as to the law pertinent to the record here made. The authorities are found in the briefs. We cite only the very late case in the Supreme Court, Kellogg Company v. National Biscuit Company, 59 S.Ct. 109, 114, 83 L.Ed. ——, Nov. 14, 1938. It is not in point on the facts, yet contains some applicable language. For instance; that even though a party is not entitled to the exclusive use of a term for its goods well-known to the public, it may require competitors to use reasonable care to inform the public of the source of its product.

"Kellogg Company was free to use the pillow-shaped form, subject only to the obligation to identify its product lest it be mistaken for that of the plaintiff. * * *

"Fairness requires that it be done in a manner which reasonably distinguishes its product from that of plaintiff. * * *

"The obligation * * * is not to insure that every purchaser will know it to be the maker but to use every reasonable means to prevent confusion."

And finally, that where two concerns are selling the same product they must take every reasonable precaution to prevent confusion or the practice of deception. Both parties have observed these admonitions.

No damages have been established.

We conclude that the plaintiff is entitled to the relief prayed for in paragraph 4 of the prayer of its complaint and that the defendant take nothing on its counterclaim. Each party to pay its own costs.

The plaintiff will submit to the court and counsel for the defendant proposed findings of fact and conclusions of law and a form of a decree.