**FLEISCHMANN DISTILLING CORPO-RATION, a corporation, Plaintiff,**

v.

**MAIER BREWING COMPANY, a corporation, and Ralphs Grocery Company, a corporation, Defendants.**

**JAMES BUCHANAN & COMPANY LIMITED, Plaintiff in Intervention,**

v.

**MAIER BREWING COMPANY, a corporation, and Ralphs Grocery Company, a corporation, Defendants in Intervention.**

**Civ. A. No. 37340.**

United States District Court
N. D. California, S. D.

Aug. 28, 1961.

Moses Lasky, Bailey Lang, Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiffs.

Mellin, Hanscom & Hursh, Oscar A. Mellin, Carlisle M. Moore, San Francisco, Cal., Hill, Farrer & Burrill, Robert Nibley, Los Angeles, Cal., for defendants.

HARRIS, District Judge.

This is a suit brought by plaintiff, The Fleischmann Distilling Corporation, hereafter called Fleischmann, and plaintiff in intervention, James Buchanan & Company Limited, hereafter called Buchanan, against defendant Maier Brewing Company, hereafter called Maier, and defendant Ralphs Grocery Company, hereafter called Ralphs. Plaintiffs seek injunctive relief and damages from defendants based upon their alleged infringement of the trademark "Black & White" which is registered under both federal and California laws and because defendants' use of the name on their beer constitutes unfair competition.

There is no basic dispute as to the facts, most of which have been admitted in the pleadings, by stipulations, by discovery or by uncontradicted testimony. Buchanan and its predecessor have blended and sold Scotch whiskey under the name "Black & White" since before the turn of the century and have marketed their product in the United States for more than fifty years. Since 1938, Fleischmann has been the sole importer of Black & White, which has been registered since the first decade of the century. It is the leader among Scotch whiskies. Its sales have exceeded a million bottles during the tenure of Fleischmann and more than 500,000 cases in the six year period 1951–1957 in California, more than half of which were sold in Los Angeles County where Ralphs does business.

Advertising expenditures on the part of plaintiffs during the last mentioned period exceeded five million dollars thus contributing to the fame of the name, "Black & White," which has been the subject of a history book (Plaintiff's Ex. 9). In the alcoholic beverage industry the name "Black & White" has come to mean Scotch whiskey, as testified to by Baumgarten.

Defendant Maier brews and sells beer including "private brands" which are offered under numerous names to super-

markets and other customers. In June 1956, Maier commenced the use of the name "Black & White" in connection with beer sold by defendant Ralphs in Los Angeles, where it has some thirty-two outlets. The name had previously been used for beer by the St. Claire Brewing Co. of San Jose in 1935 and had been abandoned in 1938. Maier learned of such use and abandonment through Mr. Mosiman who had been a salesman for St. Claire Brewing Co. before going to work for Maier.

Defendant Maier, who had admittedly heard of plaintiffs' product when the name "Black & White" was selected as a label for beer, chose to revive the nomenclature because the two products were distinct and their use should not create confusion among the buying public. This is the background which has given rise to the instant litigation in which plaintiffs ask this Court to enjoin defendants from further use of the name "Black & White" on beer, which is an alcoholic beverage.

It is to be noted at the outset that plaintiffs enjoy a trademark on both the name "Black & White" and the Scottie dogs which are pictured on Scotch whiskey. The words appear on the label on the front of the bottle; the dogs with the words appear on the back of the bottle. As testified to by Mr. Baumgarten, Vice-President of Fleischmann, the words are associated with the two Scottie dogs in advertising. In contrast, defendants market a beer which uses the words only and abstains from use of the dogs. Thus, to the extent defendants refrain from combining the picture of the Scotties with the use of "Black & White," they are avoiding an infringement of the combination mark Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F. 2d 141.

The name "Black & White" has been used for many beverages including coffee, ginger ale, malt syrup, fruit juices and grape juice which have been registered in the United States Patent Office. The mark has also been registered in California for several of these beverages as well as cocoa, tomato juice and beer. Finally, it has been used by liquor stores themselves.

Defendants contend that under the circumstances of this case, Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F. 2d 347, 351 and Century Distilling Co. v. Ph. Schneider Brewing Co., D.C., 26 F.Supp. 936, affirmed 10 Cir., 107 F.2d 699 are controlling and that the use of "Black & White" for beer is a proper one and not subject to an injunction. They point out—and are supported by the record—that there is no evidence of confusion between plaintiffs' and defendants' products nor belief among customers that Black & White beer is manufactured by Buchanan. They observe that plaintiffs have not been damaged nor are they likely to be in the future. Under the circumstances they ask this Court to rule in accordance with the decisions in the Arrow and Century cases and deny the relief which plaintiffs seek.

Both of the cases relied upon by defendants hold that use of the same mark on beer and hard liquor is proper and does not give rise to an infringement action. In the Arrow case, cordials or liqueurs, which are distilled, were the opponents of beer; in the Century case, as in the present litigation, whiskey and beer were involved. Since the court found that defendant was not attempting to palm off his beer as plaintiff's goods and was not guilty of engaging in deception of the buyer, relief was denied. In like manner, defendants have made no effort to suggest that Black & White beer is produced by Buchanan nor have they been guilty of practising deception. In good faith they sought to acquire title to the name from St. Claire Brewing. During the past several years they have built up a limited market for their product in the Los Angeles area.

There is no real competition between plaintiffs and defendants. Sunbeam Furniture, supra. Nor would the labels, which are distinct, tend to deceive an ordinary buyer or confuse him (Sleeper Lounge Company v. Bell Manufacturing Co., 9 Cir., 253 F.2d 720.) The very fact

that there is no real competition between the products is evidence that there is unlikely to be confusion in the mind of a buyer.

While there is an apparent conflict in the decisions, there is authority for defendants' position that whiskey and beer are sufficiently distinct so as to permit use of the same name on the two products. In addition to the Arrow and Century cases, supra, the following holdings buttress defendants: Burger Brewing Co. v. Maloney-Davidson Co., 6 Cir., 86 F.2d 815 (beer and malt syrup); Atlas Beverage Co. v. Minneapolis Brewing Co., 8 Cir., 113 F.2d 672 (beer and whiskey); Englander v. McKesson-Roeber-Kuebler Co., 120 N.J.Eq. 480, 185 A. 917 (gin vs. wines and cordials).

As stated above, "Black & White" are common words which have been used on many products over a long period of time. While plaintiffs' advertising has made its whiskey well known, the mark has been diluted through its diverse uses over the years. The trade word has not become so descriptive of a single product that the producer of that article is entitled to full protection against a product as distinct as beer is from whiskey. See Mershon Co. v. Pachmayr, 9 Cir., 220 F. 2d 879. The fact that there have been thirty-two registrations in the United States Patent Office and five trademark registrations in California of the words "Black & White" cannot be ignored by the Court.

Plaintiffs argue that the line must be drawn between the legitimate and the illegitimate use of the name on products which are marketed on a potentially competitive basis. They contend that this is the place to draw such a line in view of the fact that both products are alcoholic beverages. The answer to this contention is found in the test laid down by Judge Barnes of this circuit in the Sleeper Lounge Company v. Bell Manufacturing Co., supra, 253 F.2d at page 722, when he asked the crucial questions: "Is there any likelihood of confusion or mistake in such use? Would the ordinary purchaser, buying with ordinary caution, be misled? * * *" Since both answers must be in the negative in the light of the evidence before the Court, plaintiffs have failed to make out a case which entitles them to the relief which they ask.[1]

Plaintiffs' own witness in testifying as to the scope of the trademark "Black & White" and the use of the Scottie dogs, conceded that defendants' label was distinct and very candidly admitted that only two isolated instances occurred when his company was asked when it had started to make beer.[2] In sales, there was no evidence of confusion nor loss of sales of Scotch whiskey.

Under the facts of this case, defendants are entitled to judgment; and plaintiffs must be denied the relief they seek.

Accordingly, it is Ordered that plaintiffs' prayer for an injunction and damages be, and the same hereby is, denied. Defendants shall prepare findings of fact, conclusions of law and decree.

1. Lack of confusion on the part of the buying public distinguish the principal case from Stork Restaurant v. Sahati, 9 Cir., 166 F.2d 348, cited by plaintiffs.

2. "Q. Now, is it your contention, Mr. Baumgarten, that a customer would be confused in buying a can of Black and White beer put out by the Maier people that he was getting a product of Buchanan's? A. No. The only two very isolated instances, I was asked in South-ern California by people who were in the business, 'When did you people start making beer?' And that is, as I said, only a couple of instances that that has happened. No, my answer is no to your question.

"Q. You don't believe there would be any confusion in a customer's mind that they were buying a beer made in Great Britain? A. I wouldn't think so, no." (pp. 9–10)